Joan JONES, individually, and as guardian ad litem for Tracey Jones and Nicole Jones, Respondent,

v.

Carl FISHER, Jr., d. b. a. "The Barn," Respondent,

Wells (Minnesota) Post 1778, Veterans of Foreign Wars, Department of Minnesota, Respondent,

Wells (Minnesota) Post 210, American Legion, Department of Minnesota, Respondent.

Joan JONES, as trustee of the next of kin of Terry Jones, deceased, Respondent,

v.

Rita KORTUEM and Rita Gallagher, Defendants and Third Party Plaintiffs, Appellants,

v.

Carl FISHER, Jr., d. b. a. "The Barn," Third Party Defendant, Respondent,

Wells (Minnesota) Post 1778, Veterans of Foreign Wars, Department of Minnesota, Third Party Defendant, Respondent,

Wells (Minnesota) Post 210, American Legion, Department of Minnesota, Third Party Defendant, Respondent.

No. 50322.

Supreme Court of Minnesota.

Aug. 21, 1981.

Farrish, Johnson, Maschka, Hottinger, Sheran & Salsbery, Mankato, for Wells (Minnesota) Post 1778, Vet. of Foreign Wars, Dept. of Mn.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and J. Richard Bland, Minneapolis, for Wells (Minnesota) Post 210, American Legion, Dept. of Mn.

F. Martin Senn, Waseca, for Fisher, d. b. a. "The Barn".

Baudler, Baudler & Maus and William J. Baudler, Austin, for Fisher, d. b. a. "The Barn".

Heard before OTIS, PETERSON, and TODD, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

During the prior evening and the early morning hours of July 18, 1976, Terry Jones (Jones) was a patron at the American Legion and VFW bars in Wells, Minnesota, and also at a 3.2 tavern known as "The Barn," owned by Carl Fisher (Fisher). About 4:30 that morning, Jones, then a pedestrian and allegedly intoxicated, was struck and killed by an automobile driven by Rita Kortuem (Kortuem) and owned by Rita Gallagher (Gallagher). Jones was survived by his wife and two children.

Mrs. Jones, as trustee, brought a wrongful death action against the automobile driver and owner. The suit was settled during trial for $15,000. In addition, $10,-000 in no-fault death benefits was paid to the trustee by Kortuem's motor vehicle insurer.

Mrs. Jones and her two children, each in their own name, also brought a separate dramshop action against the Legion and VFW bars under Minn.Stat. § 340.95 (1980) and against Fisher, a 3.2 beer vendor, under the doctrine of *Trail v. Christian*, 298 Minn. 101, 213 N.W.2d 618 (1973).

When the wrongful death action was settled, it left pending the previously severed third-party complaint of Gallagher and Kortuem to intervene in (or to consolidate

William J. Nierengarten, Austin, for appellants.

Frundt, Frundt & Johnson and Michael Johnson, Blue Earth, for Jones.

its third-party proceeding with) the still-pending dramshop action for the purpose of asserting their claim for contribution. The trial court denied the motion to intervene or to consolidate, and granted summary judgment against Gallagher and Kortuem. This appeal followed. We reverse and remand.

The issue on appeal is whether a negligent motorist who strikes and kills an intoxicated pedestrian has a cause of action for contribution against either a vendor of 3.2 beer or a dramshop tortfeasor when the actions of each co-tortfeasor[1] contributed to cause the intoxicated decedent's death. Before this issue may be resolved, it must be determined whether as a matter of law the 3.2 vendor may have any liability to the decedent's spouse.

■ 1. The 3.2 vendor argues that it should not be a party defendant because the spouse of a voluntarily-intoxicated person may not recover against the vendor who sold him 3.2 beer. We do not agree with the 3.2 vendor's contention. Although one who voluntarily becomes intoxicated cannot recover for his own injury under the Dram Shop Act, see, e. g., Robinson v. Lamott, 289 N.W.2d 60, 62 (Minn.1979); Randall v. Village of Excelsior, 258 Minn. 81, 83, 103 N.W.2d 131, 133 (1960), a spouse may recover for loss of support under that act notwithstanding the injured party's or decedent's voluntary intoxication. See, e. g., Benes v. Campion, 186 Minn. 578, 581, 244 N.W. 72, 73 (1932). Similarly, in Trail v. Christian, 298 Minn. 101, 213 N.W.2d 618 (1973), while recognizing a common-law negligence action against vendors of 3.2 liquor, we expressly limited that action to "innocent third parties." Id. at 104, 213 N.W.2d 620. Just as the spouse of one who becomes intoxicated from strong liquor is viewed as an innocent third party, see Ascheman v. Village of Hancock, 254 N.W.2d 382 (Minn.1977), so too must be a spouse of one who becomes intoxicated as a result of consuming 3.2 beer. Any other result would be incongruous and inconsistent with common-law negligence precepts. Moreover, to rule otherwise would result in an unequal treatment of two classes of plaintiffs solely on the basis of the type of liquor consumed by the intoxicated person.[2] We are compelled by principles of constitutional construction to place 3.2 liquor vendors on the same footing as all other dramshop violators. Therefore, as the trial court recognized, the 3.2 liquor vendor is a proper party to this lawsuit.

■ 2. In determining whether any of the liquor vendors may be liable in contribution to the motorist who struck the intoxicated decedent, the requirements for that equitable remedy must be examined. Two requirements must be met before contribution may be obtained: "First, the co-tortfeasors must be under a common liability to the injured party. Second, the co-tortfeasors claiming contribution must have paid a disproportionate share of the judgment." Note, Contribution & Indemnity—An Examination of the Upheaval in Minnesota Tort Loss Allocation Concepts, 5 Wm. Mitchell L.Rev. 109, 125 (1979) (footnotes omitted).

■ We have held that common liability of two different parties may exist even when such liability is predicated upon different legal theories. For example, in Milbank Mutual Insurance Co. v. Village of Rose Creek, 302 Minn. 282, 225 N.W.2d 6 (1974), the trustee of a deceased passenger entered into a wrongful death settlement with the driver of the automobile. The driver's motor vehicle liability carrier, as in the instant case, then brought suit seeking

---

1. As indicated in Note, Contribution & Indemnity—An Examination of the Upheaval in Minnesota Tort Loss Allocation Concepts, 5 Wm. Mitchell L.Rev. 109, 110 n.1 (1979), use of the term "joint tortfeasors" is confusing because of its various common-law meanings. The Wisconsin Supreme Court's term, "co-tortfeasors," is more precise. See Pachowitz v. Milwaukee & Suburban Transp. Corp., 56 Wis.2d 383, 386, 202 N.W.2d 268, 270 (1972).

2. In Trail we "judicially recognized the reality that a person can become intoxicated by consuming 3.2 beer." 298 Minn. at 106, 213 N.W.2d at 621. See Wegan v. Village of Lexington, 309 N.W.2d 273 (Minn.1981).

contribution from the liquor vendor. The liquor vendor in *Rose Creek* had illegally served intoxicating beverages to the driver. In permitting contribution, in *Rose Creek* we stated:

> As defendant must, and does acknowledge, it was settled by *Farmers Ins. Exchange v. Village of Hewitt*, 274 Minn. 246, 143 N.W.2d 230, that an automobile liability insurer of an intoxicated driver who has paid bodily injury damages to a third person injured by the negligence of the intoxicated driver has a right to recover contribution from a liquor vendor who, by illegally furnishing liquor, caused the intoxication of the driver.

*Id.* at 284, 225 N.W.2d at 8.

Because *Hewitt* involved an injury and not a death, the liquor vendor in *Rose Creek* argued that there could be no contribution from a liquor vendor to a defendant liable under the Wrongful Death Act. In rejecting the liquor vendor's argument, we stated:

> While we have not previously allowed a right of contribution where damages for death by wrongful act result, *we conceive of no reason why the same rationale is not equally applicable.*

*Id.* at 285, 225 N.W.2d at 9 (emphasis added).[3]

Most recently, in *Busch v. Busch Const., Inc.*, 262 N.W.2d 377 (Minn.1977), *noted in* 5 Wm. Mitchell L.Rev. 517 (1979), this court determined that the negligence of an injured party could be compared with the strict liability of a manufacturer under the comparative negligence statute. As a corollary to that rule, we indicated that a co-tortfeasor whose liability is predicated upon strict liability is entitled to contribution from a negligent co-tortfeasor.

Respondents argue that common liability does not exist between the wrongful death and dramshop defendants because the decedent, Terry Jones, could not have maintained an action against respondents under the Civil Damage Act or the *Trail v. Christian* doctrine. Respondents' contention is correct as applied to the decedent. However, the plaintiff in the instant case is decedent's spouse, an innocent third party to whom the protections of the Dram Shop Act and the *Trail v. Christian* doctrine do apply. As such, decedent's spouse could properly bring an action under both the Dram Shop Act and the *Trail v. Christian* doctrine. Since all defendants are liable to decedent's spouse either in her capacity as trustee or individually, the common liability requirement is satisfied.

Such reasoning recognizes that defenses that do not go to the merits of a case (such as the name in which a lawsuit is brought) do not extinguish common liability. Any other result is inconsistent with this court's previous decisions allowing contribution notwithstanding defenses such as covenants not to sue, *see Employers Mutual Casualty Co. v. Chicago, St. Paul, Minneapolis & Omaha Railway*, 235 Minn. 304, 50 N.W.2d 689 (1951); the running of a statute of limitations against a co-tortfeasor, *see Gustafson v. Johnson*, 235 Minn. 358, 364, 51 N.W.2d 108, 112 (1952); failure to provide statutory notice to a municipal co-tortfeasor, *see White v. Johnson*, 272 Minn. 363, 372, 137 N.W.2d 674, 680 (1965), *overruled on other grounds; Tolbert v. Gerber Industries, Inc.*, 255 N.W.2d 362, 367–68 (1977); and failure to provide statutory notice to a dramshop defendant, *see Hammerschmidt v. Moore*, 274 N.W.2d 79 (Minn.1978). In

---

**3.** Respondent dramshops argue that the critical difference between *Rose Creek* and the instant case is that the illegal sales were not made to the motor vehicle driver, but to the decedent, Terry Jones. The dramshops' argument is inconsistent with *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977), and *Tolbert v. Gerber Industries, Inc.*, 255 N.W.2d 362 (Minn.1977), in which we emphasized that contribution is used to secure restitu-

tion and a fair apportionment of loss *among all those whose activities combine to produce the injury.* Although there has been no judicial determination of whose activity caused decedent's death, for purposes of this appeal it must be assumed that all parties were responsible. As such, it makes no difference that the illegal sale in *Rose Creek* was to the driver of the car in which the decedent was a passenger rather than to a decedent pedestrian.

each of these cases this court ruled that contribution could be sought when common liability was absent solely due to a technical procedural rule.[4]

The second requirement to obtain contribution is a co-tortfeasor's payment of a disproportionate share of the injured party's judgment or recovery. As indicated in Note, *Contribution & Indemnity, supra*:

> The requirement that liability be discharged does not require that full payment of the judgment be made to the injured party. *A settlement, for example, will fulfill the discharge requirement.* Thus, a co-tortfeasor may enter into a fair and reasonable settlement with the injured party without endangering a right to contribution. * * * [C]o-tortfeasors who are not parties to settlement agreements are protected against unfair settlements by requiring the co-tortfeasor who obtains the settlement to establish the fairness and reasonableness of the settlement. Only then will the nonsettling co-tortfeasor be subject to the settlement.

*Id.* at 128–29 (emphasis added; footnotes omitted).

The trial court held that appellants could never prove that they had paid more than their fair share of the liability. Evidently, the trial court determined that any fault on the part of the dramshops invariably would be attributed to the decedent because of his intoxication. We do not believe that this reasoning is correct. If the wrongful death and dramshop claims had been tried together, the jury would have had to apportion fault among *all* parties who might have contributed to decedent's death. *See Lines v. Ryan*, 272 N.W.2d 896 (Minn.1978),[5] *discussed in* Comment, *Intervention, Joinder and Issue Preclusion: A New Look at Tort Claim Procedures*, 6 Wm. Mitchell L.Rev. 361, 383 (1980). Only a trial on the merits will determine the causal fault of all parties responsible for the decedent's death. Once that determination is made, each party's responsibility to contribute to the award is based on common-law contribution rules. Since all the requirements for contribution may be present, appellants are entitled to prove in the pending dramshop action that they are entitled to contribution from the bars that served liquor to decedent prior to his death. Therefore, the trial court erred in refusing to permit appellants to intervene in the dramshop action.

In any subsequent trial, the question of what each co-tortfeasor's fair share of the liability is, and how that fair share should be determined must be resolved. Damages under the wrongful death statute are measured by "pecuniary loss resulting from the death" and include advice, counsel, and loss of companionship. *See, e. g., Cummins v. Rachner*, 257 N.W.2d 808, 814 (Minn.1977). Damages under the dramshop act, in case of death, are limited to loss of "means of support" to decedent's dependents. *See* Minn.Stat. § 340.95 (1980). Because "loss of support" is not equivalent to "pecuniary loss," *see Fitzer v. Bloom*, 253 N.W.2d 395, 402 (Minn.1977), damages recoverable under the Dram Shop Act are more restrictive than damages awardable

---

4. Although common liability is a prerequisite to obtaining contribution, that requirement need not be satisfied when as a result of a technical procedural requirement a tortfeasor is forced "to bear the entire financial burden of a judgment that in equity should be paid in part by another." *Note, Contribution & Indemnity, supra*, at 126 (footnote omitted). We recognized such reasoning when we stated that "[c]ontribution is a flexible, equitable remedy designed to accomplish a fair allocation of loss among parties. Such a remedy should be utilized to achieve fairness on particular facts, unfettered by outworn technical concepts like common liability." *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 128, 257 N.W.2d 679, 688 (1977).

5. In *Lines* we stated:
> [W]hen apportioning negligence, a jury must have the opportunity to consider the negligence of all parties to the transaction, whether or not they be parties to the lawsuit and whether or not they can be liable to the plaintiff or to the other tort-feasors either by operation of law or because of a prior release.

272 N.W.2d at 902–03 (quoting *Connar v. West Shore Equipment of Milwaukee, Inc.*, 68 Wis.2d 42, 44–45, 227 N.W.2d 660, 662 (1975)).

under the Wrongful Death Act. *See id.* To the extent, however, that wrongful death and dramshop damages include loss of means of support and property damages, the damages are common to both actions, and contribution lies. It is only to the extent of these common damages that liability for each co-tortfeasor's fair share of the loss may be compared. The amount of damages that is common to both the negligent tortfeasors and the dramshop tortfeasors is those damages that will compensate the surviving spouse and children for loss of means of support.[6]

In addition to the damages question that the trial court must submit, a special jury verdict question is necessary to apportion causal fault among all those responsible for the decedent's death. Although this cause of action arose prior to the 1977 amendment to Minn.Stat. § 340.95 (1980), requiring allocation of damages in accordance with Minn.Stat. § 604.01 (1980),[7] we believe that it is appropriate to apply comparative fault concepts in the same manner as we did in *Busch v. Busch Const., Inc.*, 262 N.W.2d 377 (Minn.1977),[8] *noted in* 5 Wm. Mitchell L.Rev. 517 (1979). In such cases, then, the fault of the decedent, the negligent tortfeasors and the dramshops is all taken at 100% and compared in one comparative fault question.[9]

---

**6.** In the instant case the special verdict form must contain the following question:

> What is the amount of damages that will compensate the surviving spouse and children for loss of means of support?

If the decedent's widow had first settled with the dramshop tortfeasors, the special verdict form in any subsequent wrongful death trial would have to contain the following damage questions:

> (1) What is the amount of damages that will compensate the surviving spouse and children for loss of means of support? $_____
>
> (2) What is the amount of damages that will compensate the surviving spouse and children for pecuniary loss other than loss of means of support (such as counsel, advice, comfort, assistance and protection the decedent would have given had he lived)? $_____

In the subsequent wrongful death case, only the damage award under the first question would indicate the damages that each co-tortfeasor would share commonly.

**7.** *See* Act of June 2, 1977, ch. 390, § 1, 1977 Minn.Laws 887, 887 (codified at Minn.Stat. § 340.95 (1980)), which states in relevant part, "Actions for damages based upon liability imposed by this section shall be governed by section 604.01." After providing that comparative fault concepts apply to dramshop actions, the legislature qualified the 1977 amendment's application as follows: "The provisions of section 604.01, as applied under this section, however, shall not be applicable to actions brought by a husband, wife, child, parent, guardian or other dependent of an intoxicated person." *Id.* This exception to the application of comparative fault concepts is merely a codification of our prior decisions that hold that the fault or negligence of the intoxicated person cannot reduce the dramshop recovery of such person's family or dependents. *See e. g., Ascheman v.*

*Village of Hancock*, 254 N.W.2d 382 (Minn. 1977); *Benes v. Campion*, 186 Minn. 578, 244 N.W. 72 (1932). As between dramshop tortfeasors *inter se*, comparative fault concepts apply even when a dramshop claim is commenced by a dependent of an intoxicated person.

**8.** Professor Steenson notes that under the Minnesota comparative fault act, Minn.Stat. § 604.-01 (1980), which is in part a codification of our holding in *Busch v. Busch Const., Inc.*, 262 N.W.2d 377 (Minn.1977), *noted in* 5 Wm. Mitchell L.Rev. 517 (1979), comparative fault concepts may apply when a tortfeasor's liability results from breach of a statute. *See* Steenson, *The Anatomy of Products Liability in Minnesota; Principles of Loss Allocation*, 6 Wm. Mitchell L.Rev. 243, 335–36 (1980). *See generally* Steenson, *Comparative Fault*, in No Fault & Comparative Fault Update 52, 57 (Minn. Sup.Ct. Office of Continuing Educ. for State Ct. Personnel 1981) (suggesting that comparative fault concepts apply in dramshop actions).

**9.** An example will help clarify how damages are to be allocated in this action. Assume that the dramshop claims are settled first and that the jury returns a special verdict determining that means-of-support damages are $100,000 and damages for loss of advice and counsel are $50,000. Assume further that the jury allocates fault as follows: Kortuem—25%; Decedent—15%; Legion Bar—20%; VFW Bar—20%; The Barn—20%.

Regarding damages for pecuniary loss other than loss of means of support, Kortuem would be responsible for paying $42,500 (85% of $50,-000). Only the decedent's fault reduces these damages, because the three bars have no liability to compensate decedent's spouse for these damages. Kortuem may not seek contribution from the three bars for such damages. The 85% figure is arrived at by subtracting the decedent's fault from 100%.

3. Prior to any trial on the merits, however, the trial court must hold a hearing to determine the parties' intentions regarding the settlement agreement in this case. Such a hearing is necessary because the wrongful death settlement read into the record is ambiguous as to what claims the parties settled.

Pursuant to that settlement, Kortuem paid the trustee $15,000. Presumably this was a compromise payment and $15,000 does not represent full compensation for "pecuniary loss" sustained. Additionally, that sum does not appear to be full compensation for any "means of support" damages; the next-of-kin have reserved their dramshop claims. Kortuem and the trustee agreed that all claims between them were settled and neither would have to pay the other more money. However, the trustee

also agreed that if, in the action against the dramshops, Kortuem were found free from negligence, Kortuem would be reimbursed the entire $15,000 plus the $10,000 no-fault benefits paid by Kortuem's insurer. If Kortuem were found negligent, the repayment of the $25,000 would be reduced by the percentage of Kortuem's negligence. In other words, Kortuem's payment apparently is not contingent on liability; it is contingent on a finding of negligence, even negligence less than decedent's, for which there would be no liability.

It is difficult to decipher the intent and consequences of the settlement agreement. Although the settlement stipulation speaks of Kortuem reserving a right of contribution (although the parties allocated no part of the $15,000 for loss of means of support),[10] there is other language indicating

Regarding damages for loss of means of support, Kortuem would be responsible for paying $25,000 (25% of $100,000). The three bars would be responsible for paying $20,000 each (20% of $100,000). Each bar also would be responsible for paying an additional $5,000. The additional $5,000 payment results from allocating the decedent's 15% fault between the three bars in proportion to each bar's percentage of fault. The 3.2 vendor is to be liable for exactly the same type of damages that strong liquor vendors are exposed to. Thus, damages in a *Trail v. Christian* claim are no different than damages awardable under Minn.Stat. § 340.95 (1980). Reallocating the decedent's fault in this manner is necessary because the decedent's dependents' recovery from the dramshops may not be reduced by the decedent's own fault. *See* note 8, *supra*. In computing loss of means-of-support damages, none of the decedent's fault is reallocated to the wrongful death defendant.

It is interesting to note that the legislature has indicated that a similar method of allocating loss is to be followed under the Minnesota Comparative Fault Act. Under that act, damages that would have been allocated to an insolvent co-tortfeasor are redistributed to the injured party and the remaining co-tortfeasors according to their relative degrees of fault. *See* Act of Apr. 5, 1978, ch. 738, § 8(2), 1978 Minn. Laws 840 (codified as Minn.Stat. § 604.02, subd. 2 (1980)). A discussion of that amendment is contained in Steenson, *The Anatomy of Products Liability in Minnesota: Principles of Loss Allocation*, 6 Wm. Mitchell L.Rev. 243, 334–35 (1980); Note *Contribution & Indemnity—An Examination of the Upheaval in Minnesota Tort Loss Allocation Concepts*, 109, 159–62 (1979).

We recognize that there are several different approaches available to allocate damages in the hypothetical verdict set forth above. Nevertheless, until we are convinced otherwise, the approach illustrated in this footnote is to be used because it results in the least jury confusion and provides the necessary simplicity of application lacking in other methods of allocating damages and fault in an otherwise complex situation.

**10.** In settlements of the kind at issue in the instant case, the parties should consider the use of a *Naig*-type release. A *Naig* release is typically used in workers' compensation cases when an injured employee sues a third-party tortfeasor subject to the employer's subrogation claim. In *Naig v. Bloomington Sanitation*, 258 N.W.2d 891 (Minn.1977), the employee settled with the third-party tortfeasor for $18,000 for only those claims not subject to the employer's subrogation interest; namely, pain and suffering, humiliation, and loss of consortium. In holding that such a settlement did not contravene the employer's subrogation interest, we stated:

So long as the employer is notified of negotiations leading to such settlement so that it can appear or intervene to protect its interest and so long as the employee demonstrates that the settlement concerns only damages not recoverable under worker's compensation, or allocates the settlement into recoverable and nonrecoverable claims, the employer cannot credit the nonrecoverable portion of the settlement against compensation payments.

*Id.* at 894. Just as notice of the negotiations leading to settlement must be given to an em-

that the parties did not have contribution in mind but subrogation; *i. e.*, Kortuem being subrogated to the next-of-kin's action against the dramshops. The parties also may have intended a kind of *Pierringer* release,[11] in which the trustee was settling only that part of common damages for which Kortuem would be found liable. At one point in the stipulation, Kortuem states that she is entitled to her contribution claim for sums paid to settle the wrongful death claims "by virtue of the no-fault statute itself." If so, Kortuem—more accurately, her no-fault insurer—may have merely agreed that a subrogation claim may be brought for the $10,000 in no-fault benefits paid to the decedent's spouse.

Because the trial court did not consider the effect of the ambiguous settlement agreement, we remand this matter so that the trial court may ascertain the parties' intentions when entering into the settlement. In determining the parties' intentions, parol evidence is admissible.

In summary, we hold that the decedent's spouse may bring a *Trail v. Christian* claim against the 3.2 vendor. Additionally, we hold that a right of contribution can exist between co-tortfeasors liable under the Wrongful Death Act, Dram Shop Act, and *Trail v. Christian* doctrine for such damages as are common to each action when each party is liable for the death of a third party who is the intoxicated person. Whether such a right of contribution is precluded in this case by reason of the settlement stipulation entered into by the wrongful death

tortfeasor and the trustee is a question of fact to be resolved on remand.

Reversed and remanded.

SIMONETT, Justice (concurring in part and dissenting in part).

1. I agree with the majority opinion's treatment of the contribution issue but wish to add these observations.

The trial court ruled contribution could not lie because the negligent auto driver would never have to pay more than his or her fair share. In other words, here, if the wrongful death action had been tried rather than settled, the jury would have compared the fault of Kortuem with the fault of the decedent. If Kortuem were found to be more negligent than the decedent, say, 60%, then Kortuem would pay 60% of the damages, her share, but no more; the remaining 40% would be attributable to the intoxicated decedent's own contributory negligence, and the verdict for the next of kin would be reduced by that amount.

But one cannot stop at this point. Presumably the 60% paid by the negligent auto driver includes a sum for loss of means of support, an item for which the dramshop defendant is also liable. How does one determine the dramshop's fair share of this liability? As the majority opinion points out, it cannot be said the 40% fault attributed to the deceased, intoxicated person is necessarily the same as or inclusive of the liquor vendor's fault.

---

ployer in a workers' compensation setting, if possible notice must be given to each tortfeasor facing liability under the Wrongful Death Act, Dram Shop Act, and *Trail v. Christian* doctrine.

Use of a *Naig* release in a wrongful death-dramshop setting is discussed in Simonett, *Indemnity, Contribution & Limited Releases*, in Products Liability: Beyond the Basics 74–75 (Minnesota CLE 1979).

11. A *Pierringer* release, named for the release used in the Wisconsin Supreme Court decision in *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963), (1) releases the settling co-tortfeasor from the lawsuit and discharges a part of the cause of action equal to that part attributable to the settling co-tortfeasor's causal negligence; (2) reserves the balance of the

whole cause of action against the nonsettling co-tortfeasors; and (3) contains an agreement whereby the plaintiff indemnifies the settling co-tortfeasors from any claims of contribution made by the nonsettling co-tortfeasors to the extent the settling co-tortfeasor has been released. For an in-depth analysis of the use of *Pierringer* releases in Minnesota, *see* Simonett, *Release of Joint Tortfeasors: Use of the Pierringer Release in Minnesota*, 3 Wm. Mitchell L.Rev. 1 (1977). We expressly approved the use of *Pierringer* releases in *Frey v. Snelgrove*, 269 N.W.2d 918, 921–22 (Minn.1978). We see no reason why *Pierringer* releases with *Naig* overtones could not be used to settle lawsuits such as those in the instant case.

The problem is put in sharper focus if one assumes the two causes of action are consolidated for trial and the jury then, in the one action, determines and apportions the liability of all the cotortfeasors, both the negligent auto driver and the liquor vendors. Ideally, in such a situation, the jury should first compare negligence as between the decedent and Kortuem to determine, initially, if Kortuem is liable to decedent's trustee, making this determination without diluting the negligence of the negligent tortfeasors with the fault of the dramshops. There would then be a second determination, comparing fault as between Kortuem (if found liable) and the liquor vendors. This solution, however, seems unduly unwieldy and presents complications of its own. The court's solution, to resolve the contribution issue by having one comparative fault question for all actors, has the advantage of being simpler and still affording essential fairness. While the fault of the actors is, in a sense, being diluted, it is still being compared on a relative and fair basis.

In the posture of this case before us, it would seem the contribution issue can be tried in the dramshop action. Whether a wrongful death action is to be consolidated for trial with a dramshop action continues, I should think, to be left to the discretion of the trial court. There are still problems to be resolved, but the aim is to promote, if possible, a fair sharing of the liability of those responsible.

2. I do not agree, however, with the court's holding that a *Trail* cause of action should exist against the 3.2 bar. *Trail v. Christian*, 298 Minn. 101, 213 N.W.2d 618 (1973), holds that a third person injured by the intoxicated patron has a cause of action in common-law negligence against the commercial 3.2 beer vendor. The majority now creates a new cause of action, giving the next of kin of a deceased intoxicated patron a cause of action against the 3.2 vendor.

We cannot create a new cause of action by amending either the Wrongful Death Act or the Civil Damage Act or both. This new cause of action is necessarily based on common-law negligence. If so, then comparative fault should apply as between the decedent and the 3.2 vendor. Surely, if we now say the 3.2 vendor owes a duty of care to the intoxicated person's dependents to protect the intoxicated person, then the intoxicated person should owe no less a duty to his dependents to take care of himself. Yet in *Ascheman v. Village of Hancock*, 254 N.W.2d 382 (Minn.1977), we held a dramshop vendor, who had paid means-of-support damages to the intoxicated person's dependents, could not bring a contribution action against the intoxicated person because the dependents had no action in negligence against their father and husband.

In creating this new cause of action the majority is, in effect, abrogating the common-law rule that there is no common-law cause of action for wrongful death. *Fidelity & Casualty Co. v. St. Paul Gas Light Co.*, 152 Minn. 197, 188 N.W. 265 (1922). In effect, we are adding a new kind of death action outside the Wrongful Death Act but giving it some of the characteristics of a Civil Damage Act action by limiting damages to loss of means of support with the dramshop statutory limit and denying the defense of the intoxicated person's contributory negligence.

I do not think the equal protection clause mandates this result. At the very least, the result here illustrates the problems mentioned in my dissenting opinion in *Wegan v. Village of Lexington*, 309 N.W.2d 273 (Minn.1981).

PETERSON, Justice (concurring in part and dissenting in part).

I join in the views of Justice Simonett.

AMDAHL, Justice (concurring in part and dissenting in part).

I join in the views of Justice Simonett.