NUESSMEIER ELECTRIC,
INC., Respondent,

v.

WEISS MANUFACTURING CO., a foreign corporation, and Cone Mounter Company, its trade name, Respondent,

LeSueur Electric Motor Repair,
Inc., Appellant.

No. C5–00–2184.

Court of Appeals of Minnesota.

Aug. 14, 2001.

Review Denied Oct. 16, 2001.

Robert J. Terhaar, Terhaar, Archibald, Pfefferle & Griebel, LLP, Minneapolis, MN, (for respondent Nuessmeier Electric).

Bradford J. Roegge, Abrams & Smith, P.A., Minneapolis, MN, (for respondent Weiss Manufacturing Co.).

Todd S. Lundquist, Lundquist Law Offices, Mankato, MN, (for appellant).

Considered and decided by
AMUNDSON, Presiding Judge,
LANSING and SHUMAKER, Judges.

## OPINION

LANSING, Judge

On appeal from judgment in a contribution action, a business tenant in a commercial building argues that as a matter of law it has no common liability with an electric-heater manufacturer to the building owner and the fire insurer for fire damage to the building and its contents. A jury found the tenant and the electric-heater manufacturer negligent for the fire damage and the district court entered judgment on the jury's apportionment of fault applied to the amount for which the building owner and its subrogated insurer settled their claim against the heater manufacturer. The tenant alternatively argues that it was denied a jury trial on damages. Because we conclude that the tenant has common liability, we affirm the manufacturer's right to seek contribution. But we reverse and remand for a jury decision on the amount of damages to determine whether the manufacturer paid more than its fair share.

## FACTS

Nuessmeier Electric owns a commercial building in Le Sueur. In November 1997, a fire damaged the building and its contents. Following an investigation, the building owner and Federated Mutual Insurance Company, its fire insurer, concluded that the source of the fire was a ConeMount bearing heater owned and used by LeSueur Electric Motor Repair, a tenant that leased space in the building.

The insurer paid the owner approximately $331,000 for damage to the building and its contents. The owner and the subrogated insurer then brought a product-liability action against Weiss Manufacturing Company, the manufacturer of the ConeMount bearing heater. The subrogated insurer claimed damages of $156,061.87 for structural loss to the building and $175,541.55 for the building owner's personal property and business losses. The owner claimed damages of $4,292.29 for utility costs, business income loss, extra expenses, and lost rents that were not covered by the fire-insurance policy.

The heater manufacturer brought a third-party contribution claim against the tenant, alleging that the tenant caused the fire by misusing and altering the electric heater. The tenant denied liability and moved for summary judgment, arguing that because it is an imputed co-insured under the building's fire insurance policy, it could not be liable to the owner or the building's insurer and thus the common liability essential to a contribution action does not exist. The district court denied summary judgment.

Before trial the owner and the insurer settled with the manufacturer for $175,000. The settlement was in full satisfaction of all damages arising out of the fire, and left for trial only the manufacturer's contribution claim against the tenant. At the conclusion of the trial on the contribution claim, the district court submitted special-verdict interrogatories to the jury on negligence and apportionment, but not on the amount of damages. Instead, the court adopted the $175,000 settlement as the total damages amount. The tenant made an offer of proof that the total damages amounted to approximately $350,000. The tenant also moved to dismiss the contribution action on the ground that the manufacturer failed to prove that the settlement was reasonable. The district court denied the motion, reiterating that the damages were established by the $175,000 settlement amount.

The jury attributed 72% of fault to the manufacturer and 28% of fault to the tenant. The district court entered judgment against the tenant for $49,000, representing 28% of the $175,000 settlement amount among the owner, the insurer, and the manufacturer.

The tenant brought posttrial motions challenging the district court's ruling on common liability and the court's decision to accept the settlement amount as total damages rather than submitting that determination to the jury. The district court denied the motions, and the tenant appeals, arguing that (1) the manufacturer has no legal right to contribution because the tenant has no common liability with the manufacturer for the fire damage, and (2) the district court erred in failing to allow the jury to determine the total damages caused by the fire because a jury finding was necessary to determine whether the manufacturer had paid more than its fair share of any common liability.

## ISSUES

I. Did the tenant's status as a co-insured under the *Bruggeman* doctrine extinguish the tenant's common liability with the manufacturer to the building owner and the subrogated fire insurer?

II. Did the district court err in determining damages to be the amount of the settlement and not submitting the issue to the jury when the settlement involved both common and noncommon damages?

## ANALYSIS

 Contribution is an equitable doctrine that requires that "persons under a common burden share that burden equitably." *Spitzack v. Schumacher,* 308 Minn. 143, 145, 241 N.W.2d 641, 643 (1976). The essential elements of a contribution claim

are (1) common liability of two or more actors to the injured party; and (2) the payment by one of the actors of more than its fair share of that common liability. *City of Willmar v. Short–Elliott–Hendrickson, Inc.,* 512 N.W.2d 872, 874 (Minn. 1994). Whether the right of contribution exists is a legal issue, which we review de novo. *See Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn.1989) (appellate courts independently review district court's application of law when material facts are not in dispute).

 Common liability is created at the instant the tort is committed. *Spitzack,* 308 Minn. at 145, 241 N.W.2d at 643. It arises when both parties are liable to the injured party for part or all of the same damages. *Milbank Mut. Ins. Co. v. Village of Rose Creek,* 302 Minn. 282, 284–85, 225 N.W.2d 6, 8–9 (1974). It exists even though the parties' liability may depend on different legal theories. *City of Willmar,* 512 N.W.2d at 874 ("[T]he nature of the common liability is of secondary importance to the *fact* of common liability itself." (emphasis added) (citation omitted)).

### I

 The tenant argues that, as a matter of law, it has no common liability with the manufacturer to the building owner and the building's insurer because it is a de facto co-insured under *United Fire & Cas. Co. v. Bruggeman,* 505 N.W.2d 87 (Minn. App.1993), *review denied* (Minn. Oct. 19, 1993). In *Bruggeman,* we recognized that both a landlord and a tenant have an insurable interest in the property and that rent payments are generally understood to include the cost of insurance, which is purchased to hold an insured harmless from its negligence. *Id.* at 89–90. Thus, in the absence of a lease provision that expressly

requires a tenant to obtain fire insurance on the building, a landlord's insurer cannot subrogate against a negligent tenant for damage to the building structure because the tenant is a co-insured under the policy. *Id.* at 88–90.

*Bruggeman,* however, does not have the far-reaching effect advanced by the tenant in this case of extinguishing all common liability for negligent acts of a tenant resulting in damage to the building and its contents.

First, *Bruggeman's* rationale relies on the landlord and tenant's shared insurable interest which is limited to the structure that is the subject of the fire policy. *See id.* at 89. Thus, the doctrine does not shield a tenant from liability for nonstructural losses caused by a fire. *See id.* The supreme court has confirmed *Bruggeman's* narrow application to the co-insured's interest in the building structure. *See Osborne v. Chapman,* 574 N.W.2d 64, 67–68 (Minn.1998) (stating that *Bruggeman* does not extend to a landlord's claim for lost rent—whether or not covered by insurance—because the tenant has no insurable interest in the lost-rent claim and would not be a co-insured for that coverage).

The *Bruggeman* doctrine also does not extend to losses incurred by the owner that are not covered by insurance, because the doctrine hinges on the co-insured relationship and would not extend to uninsured losses. *See, e.g., Blohm v. Johnson,* 523 N.W.2d 14, 15 (Minn.App.1994) (district court allowed entry of judgment against the tenant for the landlord's uninsured losses).

The subrogated insurer originally claimed damages of $156,061.87 for structural loss to the building and $175,541.55 for personal-property loss that included business losses and damage to the owner's inventory, furniture, supplies, and equipment. Thus, more than half of the dam-

ages claimed by the subrogated insurer are for nonstructural losses. Also, all the damages claimed by the building owner, $4,292.29 for utility costs, business income loss, extra expenses, and lost rents, are for nonstructural losses that are not insured. At a minimum, more than half of the claimed damages fall outside the co-insured, structural damage encompassed by the *Bruggeman* doctrine. Because both the manufacturer and the tenant could be held liable to the landlord and the subrogated fire insurer for part of the same damages, they share common liability to them. *See Milbank,* 302 Minn. at 284–85, 225 N.W.2d at 8–9 (common liability arises when both parties are liable for part or all of the same damages).

■ Second, we reject the tenant's argument that the *Bruggeman* defense to a building insurer's subrogation action extinguishes the common liability necessary to support a contribution action. The supreme court has held that technical defenses that do not go to the merits of a case do not extinguish common liability even though they eliminate one defendant's direct obligation to compensate the plaintiff. *Jones v. Fisher,* 309 N.W.2d 726, 729 (Minn.1981). Consequently, even when a plaintiff could not enforce recovery against a defendant, common liability remains if the factor preventing enforcement is extrinsic to the tort itself—such as failure to provide statutory notice, a covenant not to sue, personal immunity, or the expiration of the statute of limitations—and the acts or omissions of the defendant are otherwise sufficient to subject the defendant to liability. *Horton v. Orbeth,* 342 N.W.2d 112, 114 (Minn.1984). Because the tenant's status as a co-insured is extrinsic to its negligence in misusing or altering the defective ConeMount bearing heater, we conclude that the district court did not

err in finding that common liability was present.

 But the right to *seek* contribution is not equivalent to the right to *recover* contribution. *Milbank*, 302 Minn. at 285, 225 N.W.2d at 9. The right to recover contribution depends on whether one tortfeasor has paid more than its fair share of the loss. "Fair share" is measured by the extent to which each tortfeasor could be liable to the injured parties. *See id.* (stating that while common liability gives rise to contribution claim, the right to contribution depends on the individual liability of each tortfeasor to the injured party); *see also Jones*, 309 N.W.2d at 730. Therefore, although the *Bruggeman* doctrine does not defeat common liability, it is directly relevant to the second element of contribution, that is, whether the manufacturer paid more than its fair share of the common liability.

Both *Milbank* and *Jones* are instructive on this point. In *Milbank* the supreme court recognized that a dramshop and an intoxicated driver had common liability to the heirs of the fatally-injured passengers, but limited the driver's right to recover contribution by the extent to which the dramshop could be held liable to the heirs. 302 Minn. at 283–86, 225 N.W.2d at 8–9. In *Jones* the supreme court held that a driver and a dramshop had common liability to the heirs of the fatally-injured pedestrian, but only to the extent that each tortfeasor could be held liable to the heirs. 309 N.W.2d at 730–31.

As in *Milbank* and *Jones*, the liability in this case is not equally proportioned, and the damages that the subrogated fire insurer could recover against the tenant are more restrictive than the damages it could recover against the manufacturer. The damage that is common to both the tenant and the manufacturer includes all fire damage except the structural damage.

The supreme court recognized this disparity in *Jones*: "It is only to the extent of these common damages that liability for each co-tortfeasor's fair share of the loss may be compared." *Id.* at 731. The determination of each co-tortfeasor's fair share also forms part of our consideration on whether the amount of the damages is a jury issue.

## II

 The second issue is whether the district court erred in failing to submit the damages issue to the jury. In its new-trial motion, the tenant claims that a factual resolution of the damages question was necessary to determine whether Weiss paid more than its "fair share" by settling for $175,000 with the owner and the subrogated fire insurer. The district court did not submit the damages issue to the jury, and instead determined the damages to be the $175,000 settlement amount. When reviewing a denial of a new-trial motion, this court determines whether the denial involved a violation of a legal right or an abuse of judicial discretion. *See La Valle v. Aqualand Pool Co.*, 257 N.W.2d 324, 328 (Minn.1977).

 The scope of the settlement agreement determines the viability of the contribution claim, because a settling tortfeasor can only pursue contribution against a non-settling tortfeasor if the settlement extinguished the liability of the non-settling tortfeasor. *Reserve Ins. Co. v. Village of Big Lake*, 304 Minn. 148, 153, 230 N.W.2d 47, 50 (1975). In other words, the settling tortfeasor must have removed the threat that the injured party might later proceed directly against the non-settling tortfeasor. *Id.* at 153–54, 230 N.W.2d at 50 (barring contribution when settlement agreement did not relieve the non-settling co-tortfeasor of potential liability).

Although the settlement agreement among the owner, insurer, and the manufacturer states that only the manufacturer is released, the agreement further states that the $175,000 is "full satisfaction for the entire amount of damages sustained by [the owner] and its insurer in the November 29, 1997 accidental fire." The settlement agreement also specifically provides that the manufacturer may proceed on its contribution claim against the tenant. We read the "full satisfaction" language in the release as sufficient to support a finding that the tenant has been released from any potential liability. *See Gronquist v. Olson,* 242 Minn. 119, 126, 64 N.W.2d 159, 164 (1954) (stating that if injured party has accepted full satisfaction for injury suffered by him, he should not be permitted to recover again for the same injury). Whether the district court should submit the issue of damages to the jury when a settling tortfeasor seeks contribution from a non-settling tortfeasor is a more difficult question.

Before trial the district court and the attorneys discussed whether the damages issue should be submitted to the jury. Although the discussion is not on the record, the tenant's attorney preserved an objection to the district court's decision, announced the morning of trial, to accept the settlement amount as the damages amount and not to submit the issue to the jury. When the attorneys made a record of their objections at the conclusion of trial, the tenant's attorney made an offer of proof that the claimed damages amounted to $350,000, not $175,000, and argued that the contribution claim should be dismissed, both because damages had not been proved and decided by the jury and because no determination had been made that the settlement was reasonable.

■■■■ When the action seeking contribution from a co-tortfeasor is for damages paid pursuant to a settlement agreement that resolves liability for damages that are common to both tortfeasors, a specific factual determination on damages may not be necessary. *See Samuelson v. Chicago, Rock Island, & Pacific R.R.,* 287 Minn. 264, 268–70, 178 N.W.2d 620, 624 (1970) (accepting, without specifically deciding, that a jury determination on the reasonableness of the settlement in a contribution action is sufficient to determine damages when the tortfeasors have common liability for common damages); *see also Miller v. Shugart,* 316 N.W.2d 729, 735 (Minn.1982) (characterizing *Samuelson* as recognizing that co-tortfeasor in contribution action must only prove that settlement is reasonable).

But it is problematic to try to reason by analogy from a contribution action in which co-tortfeasors have common liability *and* common damages to this action in which the manufacturer and the tenant have common liability, but do not have common damages. The primary problem is that in the absence of a fact determination on damages, the settling tortfeasor is allowed to unilaterally bind the non-settling tortfeasor to a damages amount that includes both damages for which it would be liable and damages for which it would not be liable. These amounts, in turn, determine the amount the settling tortfeasor would be able to recover in the contribution action.

The legal theory supporting the right of one co-tortfeasor to bind the other to reasonable damages negotiated in a settlement is that the co-tortfeasors have a unified interest in keeping the total damages to the lowest amount the plaintiff is willing to accept; the co-tortfeasors' adversarial interests in what percentage each must pay is then later determined in a contested trial between them. That alignment of interests is altered, however, when a co-

tortfeasor negotiates a settlement that involves both common and noncommon damages. The presumption of validity that flows from the common interest is lost because the allocation of common damages (for which contribution is available) and noncommon damages (for which contribution is unavailable) is itself adversarial, and because the co-tortfeasor has no economic incentive to limit the noncommon damages.

By holding that the settlement amount determined the damages for the contribution action, the district court essentially determined that the entire settlement would be allocated to common damages. This approach raises issues of fairness and due process because nothing in the record supports the full allocation to common damages. *See, e.g., Kliniski v. Southdale Manor, Inc.,* 518 N.W.2d 7, 10 (Minn.1994) (holding that district court erred in allocating entire settlement to employee when workers' compensation insurer proved substantial claim for past and future compensation payments); *Time Ins. Co. v. Opus Corp.,* 519 N.W.2d 470, 474 (Minn.App. 1994) (holding that settlement that attempted to defeat health insurer's known subrogation claim by reciting that settlement did not include payment for medical expenses would not be enforced).

■ To avoid an unfair manipulation of contribution liability, and relying on the principles expressed in *Milbank* and *Jones,* we conclude that the damages issue should have been submitted to the jury. Contribution is appropriate only when the settling tortfeasor has paid more than its fair share of the loss. *City of Willmar,* 512 N.W.2d at 874. It is impossible to determine whether the settling tortfeasor has paid more than its "fair share" without a damages determination by the jury. The settling and non-settling tortfeasor have differing obligations for the injured parties' damages. *See Jones,* 309 N.W.2d

at 731 (contribution is available only for damages that are common to both tortfeasors); *see also Milbank,* 302 Minn. at 285, 225 N.W.2d at 9 (holding that settlement amount between injured party and settling tortfeasor does not determine the damages in a contribution action). Thus, the jury must determine the total obligation of the manufacturer to the injured parties before the district court can determine if the manufacturer paid more than its fair share in settling its total obligation for $175,000.

Because we hold that the district court erred in failing to submit the damages issue to the jury, the tenant is entitled to a new trial on damages. A jury determination should be made both on common damages (which includes any fire damage not related to structural loss) and on noncommon damages (which includes any fire damage for structural loss).

Once the jury returns its verdict on damages, the district court must determine whether the manufacturer has paid more than its fair share of the loss. This is accomplished by determining the manufacturer's total obligation for both common and noncommon damages. In making that determination, the district court should apply the manufacturer's percentage of fault (72%) to both the common and noncommon damages. The percentage reduction applies to the common damages as a result of the jury's apportionment of fault; the percentage reduction applies to the noncommon damages (building structure) because if the subrogated fire insurer had pursued the action to trial, under the logical extension of *Bruggeman,* the subrogated insurer would have borne the fault of its tenant insured (28%). *See Medica, Inc. v. Atlantic Mut. Ins. Co.,* 566 N.W.2d 74, 76–77 (Minn.1997) (in subrogation, insurer stands in shoes of its insured and acquires rights insured has against third party).

If the $175,000 settlement exceeds 72% of the total common and noncommon damages, then the manufacturer paid more than its "fair share." If the manufacturer paid more than its fair share, it is entitled to contribution from the tenant for the difference between the $175,000 and 72% of the total damages.

## DECISION

Because the manufacturer and the tenant have common liability for the damage to the building and its contents, the district court did not err in finding that the first prong of the contribution test had been met. But because it is impossible to determine on this record whether the manufacturer paid more than its fair share of the common damages, the district court erred in determining that the second prong had been met. Accordingly, we reverse the denial of the new-trial motion and remand for a new trial on damages.

**Affirmed in part, reversed in part, and remanded.**