THE FARMERS STATE BANK AND TRUST COMPANY, Adm'r of the Estate of Kellie L. Wheatley, Deceased, *et al.*, Plaintiffs-Appellants, v. LAHEY'S LOUNGE, INC., *et al.*, Defendants-Appellees.

Fourth District   No. 4—87—0467

Opinion filed February 3, 1988.

474

Edward J. Kionka, of Murphysboro, and John E. Norton, of John E. Norton & Associates, of Belleville, for appellants.

Christopher J. Klockau and Thomas L. Kilbride, both of Klockau, Mc-Carthy, Ellison & Marquis, P.C., of Rock Island, for appellee Lahey's Lounge, Inc.

John P. Lynaugh, of John P. Lynaugh, Ltd., of Springfield, for appellee Veterans of Foreign Wars Post 1379.

Daniel Simmons, of Heyl, Royster, Voelker & Allen, of Springfield, for appellee Leonard's and Leroy's Pub, Inc.

JUSTICE McCULLOUGH delivered the opinion of the court:

On June 28, 1985, the plaintiffs, Orville Wheatley and Christopher Wheatley, a minor, through his guardian, brought suit in the circuit court of Morgan County under the Dramshop Act (Ill. Rev. Stat. 1985, ch. 43, par. 135). Plaintiffs sought recovery for injuries sustained as a result of the death of Kellie Wheatley, plaintiffs' wife and mother, respectively. Plaintiffs sought recovery for injuries to person, property, and means of support. The three defendants, Lahey's Lounge, Leroy's Pub, and Veterans of Foreign Wars (VFW) Post 1379, moved for dismissal. The trial court dismissed those counts alleging: injury to means of support; injury to property for loss of future earnings and services; and injury to property for loss of society and consortium. Plaintiffs then moved for voluntary dismissal of the remaining counts. The court granted plaintiffs' motion and plaintiffs appeal therefrom.

Plaintiffs raise three issues on appeal, all concerning damages available under the Illinois Dramshop Act, specifically: (1) whether injuries to "means of support" include loss of a housewife's domestic services; (2) whether injuries to property include loss of a housewife's domestic services; and (3) whether injuries to property include the loss of society and consortium.

On July 4, 1984, Kellie L. Wheatley was struck and killed by a van driven by Edward Frietag. Wheatley suffered massive head in-

juries and was pronounced dead on arrival at Passavant Hospital. Police officers, who arrived on the scene to investigate, immediately detected a strong odor of alcohol on Frietag. Frietag was given a breathalyzer test, the results indicating a blood-alcohol level of .16. Frietag then submitted to a blood test, which showed a blood-alcohol level of .18.

Frietag had been at three dramshops on the date of the incident. According to the depositions and affidavits filed with the court, Frietag, accompanied by his wife, arrived at VFW Post 1379 at approximately noon. They remained at the VFW post until 1 p.m. From this point, Frietag proceeded directly to Lahey's Lounge, where he stayed until approximately 3 p.m. Frietag was next seen at Leroy's Pub, where he remained until 5 p.m. Although there was some discrepancy as to the exact amount of alcohol consumed, Frietag admitted drinking at each tavern.

Plaintiffs filed suit against the three dramshops which allegedly caused Frietag's intoxication. The complaint, which was amended several times, in its final form, alleged 15 counts, 5 against each defendant.

The five areas upon which plaintiffs sought recovery included: (1) a survival action for the conscious pain and suffering of the deceased prior to her death; (2) an action for property damage, specifically expenses incurred for the medical treatment, ambulance service, and the funeral of the deceased; (3) an action for injuries to "means of support" based upon the loss of the deceased's future earnings and services; (4) an action for property damages due to the loss of the deceased's future earnings and services; and (5) an action for property damages for the loss of the deceased's society and consortium.

The deceased, Kellie Wheatley, was not employed outside of the home and earned no income during 1984. In 1981 and 1982, she earned $674 and $357 respectively as a part-time seamstress. It was undisputed that her personal living expenses exceeded those amounts earned. Plaintiff Orville Wheatley's income tax returns for 1983 and 1984 did not reflect any income from his wife.

There was much evidence regarding the superior quality of the deceased's skills as a homemaker, wife, and mother. Plaintiffs presented evidence of the cost of child care and other expenses to replace the domestic services previously performed by the deceased. Future child care expenses were estimated in excess of $19,000. Plaintiffs' expert, Dr. Leroy Grossman, calculated the value of the loss of the deceased's past and future domestic services at $385,227.

Following motions by the defendants, the trial court dismissed

those counts seeking recovery for injury to means of support, property damages for future earnings and services, and property damages for loss of society and consortium. The court, in granting defendants' motion, expressed its reliance upon *Wilberton v. Freddie's Pepper Box, Inc.* (1986), 148 Ill. App. 3d 319, 499 N.E.2d 615. Plaintiffs elected to stand on the dismissed counts and moved to voluntarily dismiss the remaining counts. The court granted the plaintiff's motion.

INJURIES TO MEANS OF SUPPORT

■■ It is uncontested that damages for injuries to "means of support" are available under the Illinois Dramshop Act (Act) (Ill. Rev. Stat. 1985, ch. 43, par. 135) where an injured party was employed for cash. The plaintiffs, however, assert that "means of support" should also include domestic services provided by a housewife. Since the acts of cooking, cleaning, and child care are occupational in nature and are easily subject to monetary valuation, the plaintiffs claim they constitute "means of support."

Section 6—21 of the Act provides recovery for "injuries to means of support caused by an intoxicated person." (Ill. Rev. Stat. 1985, ch. 43, par. 135.) Although the Act is remedial in this context, the Act is essentially penal in character providing recovery for injuries which result from the tortious conduct of intoxicated persons without regard to fault. (*Howlett v. Doglio* (1949), 402 Ill. 311, 83 N.E.2d 708.) Consequently, the Act must be strictly construed "to suppress the mischief and advance the remedy." (402 Ill. at 318, 83 N.E.2d at 712.) Since the recoverable injuries are specifically enumerated, recovery must be limited to those classes named or fairly encompassed within the terms. 402 Ill. at 318, 83 N.E.2d at 713.

■■ Recovery for loss of support under the Act is justified under the theory that a person actually contributing to support prior to the time of his death would likely have continued such support had he lived. (*Angeloff v. Raymond* (1979), 70 Ill. App. 3d 594, 388 N.E.2d 1128.) Thus, the law requires that support was in fact rendered, and recovery cannot be based upon the future potentiality of support not presently provable. (70 Ill. App. 3d 594, 388 N.E.2d 1128; see also *Penoyer v. Hare* (1979), 76 Ill. App. 3d 225, 394 N.E.2d 1082.) Support must be measured by such tangibles as loss of wages and inability to continue to earn a living. (*Stevens v. B & L Package Liquors, Inc.* (1978), 66 Ill. App. 3d 120, 383 N.E.2d 676.) The determination of what constitutes "means of support" is a question of fact.

The plaintiffs cite *Weiner v. Trasatti* (1974), 19 Ill. App. 3d 240, 311 N.E.2d 313, for the proposition that domestic services rendered

by a housewife are included in the concept of means of support. While the *Weiner* court alluded to the fact that domestic services were a means of support, numerous subsequent cases have held this to be *dicta.*

In *Weiner*, a First District Appellate Court construed loss of means of support to include those services rendered by a wife in the performance of her household and domestic duties. The deceased wife in *Weiner*, however, was employed outside the home, and supported her husband in business endeavors, as well as provided domestic services to her family. In finding an injury to means of support, the court noted:

> "Means of support include all those resources from which the necessities and comforts of living are or may be supplied. [Citation.] The capacity for providing means of support may be shown by proof of earnings and contribution of services or income. [Citations.] The services of a wife to which a husband is entitled include those rendered by the wife in performance of her household and domestic duties, as well as those rendered by her while assisting the husband in his business." *Weiner*, 19 Ill. App. 3d at 246, 311 N.E.2d at 319.

Since the *Weiner* disposition, Illinois courts have continued to back away from the language characterizing domestic services as a means of support. These courts construe the *Weiner* language as *dicta,* having no precedential value. (See *Wilberton*, 148 Ill. App. 3d 319, 499 N.E.2d 615; *Maras v. Bertholdt* (1984), 126 Ill. App. 3d 876, 476 N.E.2d 599; *Penoyer v. Hare* (1979), 76 Ill. App. 3d 225, 394 N.E.2d 1082; *Martin v. American Legion Post No. 784* (1978), 66 Ill. App. 3d 116, 383 N.E.2d 672; *Stevens v. B & L Package Liquors, Inc.* (1978), 66 Ill. App. 3d 120, 383 N.E.2d 676.) Means of support, as defined post-*Weiner*, relates solely to a party's wage-earning potential and does not include maternal duties and domestic chores.

In *Wilberton*, the court was presented with a case factually analogous to the situation herein. The legal guardian of the children of the deceased mother sought recovery for injuries to means of support, specifically for lost domestic services. (*Wilberton*, 148 Ill. App. 3d 319, 499 N.E.2d 615.) The court in *Wilberton* distinguished the *Weiner* holding, finding that the mother's services were not so occupational in nature so as to permit recovery. (*Wilberton*, 148 Ill. App. 3d at 323, 499 N.E.2d at 618.) In denying recovery, the court further stated:

> "[W]e believe the liberal construction plaintiff urges us to apply to 'means of support' to include decedent's alleged 'occupa-

tional services and support' would expand the remedy of the statute far beyond the legislature's intent. 'When a statute is amended after judicial opinions construing it have been published, the legislature is presumed to have acted with knowledge of those opinions.' *** [T]he Act has been amended numerous times *** as recently as June 1985. To date the legislature has not seen fit to include maternal care of children, domestic services or governmental benefits as resources constituting means of support." *Wilberton*, 148 Ill. App. 3d at 323-24, 499 N.E.2d at 619.

The post-*Weiner* line of cases is further supported by the Illinois Pattern Jury Instruction which defines "means of support." The instruction reads:

"The phrase, 'means of support' includes the necessities of life, and comforts as well. Whatever lessens or impairs the ability to supply suitable comforts which might reasonably be expected from the person who furnished support, considering his occupation and *capacity for earning money*, may be regarded as lessening or impairing the 'means of support' referred to in these instructions." (Emphasis added.) Illinois Pattern Jury Instructions, Civil, No. 150.14 (2d ed. 1971).

■ A motion to dismiss admits facts well pleaded and all reasonable inferences which can be drawn therefrom. (*Maras*, 126 Ill. App. 3d at 889, 476 N.E.2d at 609, citing *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472.) Upon review of a trial court's order granting a defendant's motion to dismiss, the reviewing court must determine whether the allegations of the complaint, when interpreted in a light most favorable to plaintiff, are sufficient to set forth a cause of action upon which relief may be granted. (*Village of Wheeling v. Stavros* (1980), 89 Ill. App. 3d 450, 411 N.E.2d 1067.) The appellate court is only concerned with questions of law presented by the pleadings.

■ Illinois precedent to date has not recognized loss of means of support as encompassing recovery for domestic services. The law requires evidence of a financial contribution to sustain a claim for recovery. Plaintiffs herein fail to show any monetary contributions made by the deceased prior to her death. As such, the trial court correctly granted the defendant's motion to dismiss.

PROPERTY INJURY

■■ The plaintiffs alternatively argue that if injury for loss of domestic services is not recoverable as a means of support, then it

should be recoverable as an injury to property. In support of this contention, plaintiffs cite a number of cases involving wrongful death actions which allowed recovery for emotional distress, loss of society, and loss of consortium. The plaintiffs maintain this broad interpretation of injuries to property should apply similarly to dramshop recovery. We disagree.

In *Howlett v. Doglio* (1949), 402 Ill. 311, 83 N.E.2d 708, the Illinois Supreme Court found that "pecuniary injuries" available under the Wrongful Death Act (Ill. Rev. Stat. 1947, ch. 70, par. 2) refer to a measurement of damages that is not synonymous with "injury in property" under the Dramshop Act. The court distinguished the two available remedies in light of the distinct purposes and objectives of the Wrongful Death Act and the Dramshop Act. (*Howlett*, 402 Ill. 2d 311, 83 N.E.2d 708.) The Dramshop Act and the Wrongful Death Act create different statutory rights and duties; there is nothing in either act which is a delimitation or enlargement of the other. *Slone v. Morton* (1963), 39 Ill. App. 2d 495, 188 N.E.2d 493.

An injury to property under the Dramshop Act occurs when a person's estate is lessened by other than a personal injury or breach of contract. (*Fortner v. Norris* (1958), 19 Ill. App. 2d 212, 153 N.E.2d 433.) Such injuries need not necessarily be direct physical injuries to the property itself. (19 Ill. App. 2d 212, 153 N.E.2d 433.) To date, such injuries have only included recovery of medical and funeral expenses. (See *Thompson v. Tranberg* (1977), 45 Ill. App. 3d 809, 360 N.E.2d 108; *Kelly v. Hughes* (1962), 33 Ill. App. 2d 314, 179 N.E.2d 273.) There is no case law in Illinois interpreting "injury to property" to include loss of future services. The supreme court has, however, deemed that mental disturbances which do not result in any physical injury or disability do not constitute an injury to person under the dramshop recovery provisions. *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157.

The plaintiffs' reliance upon *Elliott v. Willis* (1982), 92 Ill. 2d 530, 442 N.E.2d 163, must be addressed. In *Elliott*, the court ruled that pecuniary damages available under the Wrongful Death Act included the loss of society and consortium. In defining "pecuniary injuries" the court distinguished the *Howlett* language which defined property as tangible real or personal property. The court did not, however, address the concept of property damages available under the Dramshop Act. The issue was not before the court.

More recently, in *Maras v. Bertholdt* (1984), 126 Ill. App. 3d 876, 476 N.E.2d 599, the court again questioned the viability of the *Howlett* concept of injury to property. The court did not, however, ex-

tend the concept to include "pecuniary injury," as defined in the Wrongful Death Act. Once again, the precise issue of defining property injury under the Dramshop Act was not before the court.

To date, property damage, for which recovery is available under the Act, has been limited to expenses incurred for medical treatment or funerals. The supreme court holding in *Knierim* clearly evidences an intent to limit recovery under the Dramshop Act. Extending recovery to include loss of future services, which is more appropriately an issue of loss of means of support, is not supported by the statutory language or the case law construing such language.

LOSS OF SOCIETY AND CONSORTIUM

■ Plaintiffs' final contention alleges that injuries to property should be expanded to include loss of society and consortium. The plaintiffs maintain that since recovery for loss of society and consortium is available under the Wrongful Death Act, it should also be available under the Dramshop Act.

There is no dispute that damages for loss of society and consortium are available under the Wrongful Death Act. (*Elliott*, 92 Ill. 2d 530, 442 N.E.2d 163.) The Illinois courts and legislature, however, have not yet seen fit to extend recovery of this nature to a cause of action brought under the Dramshop Act. (Annot., *Recovery Under Civil Damage (Dram Shop) Act for Intangibles Such as Mental Anguish, Embarrassment, Loss of Affection or Companionship, or the Like*, 78 A.L.R.3d 1199, 1205-07 (1977 & Supp. 1987).) The rationale underlying such a limitation is that the Act cannot be enlarged by construction beyond the meaning given it in clear and explicit terms. (Annot., 78 A.L.R.3d 1199, 1202 (1977).) Since the statute limits recovery, by its terms, to injury in person, property, or means of support, no recovery for loss of society and consortium may be had. (Annot., 78 A.L.R.3d 1199, 1202-03 (1977); see also *Knierim*, 22 Ill. 2d 73, 174 N.E.2d 157 (recovery for mental disturbance without manifestation of physical injuries not available under Dramshop Act); *Valicenti v. Valenze* (1986), 68 N.Y.2d 826, 499 N.E.2d 870, 507 N.Y.S.2d 616 (husband and children could not recover for loss of consortium under Dramshop Act); *Clemas v. Northern States Enterprises, Inc.* (Minn. App. 1985), 361 N.W.2d 149 (wife's claim for loss of companionship, vacation time, and increased yard work were beyond scope of Civil Damages Act).)

Based upon the clear statutory language and the reluctance of Illinois courts to expand recovery in this area, we affirm the trial court's ruling.

Based on the foregoing, the decision of the circuit court of Morgan County is affirmed.

Affirmed.

GREEN, P.J., and SPITZ, J., concur.