■ In the Matter of SADIE VAN DYKE, by VIRGINIA BOMBARD, Her Attorney-in-Fact, Petitioner, v NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES et al., Respondents.—Casey, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Saratoga County) to review a determination of respondent State Department of Social Services which denied petitioner's request for medical assistance.

Petitioner's application for medical assistance in May 1990 was denied on the ground that petitioner's resources, including the uncompensated value of nonexempt resources transferred within 24 months prior to the date of the application, exceeded the statutory resource limitation. The relevant transfers were made by petitioner's daughter out of a bank account held jointly by petitioner and her daughter, which had existed since 1968. The proceeds of the sale of petitioner's house, approximately $73,000, were deposited in the account in April 1988. In May 1990, the balance in the account was less than $150.

Respondent Saratoga County Department of Social Services (hereinafter the local agency) concluded that the entire balance in the account as of May 1988, approximately $68,000, belonged exclusively to petitioner and that all subsequent transfers out of the account should be considered as a resource available to petitioner, pursuant to Social Services Law § 366 (5), in determining her eligibility for medical assistance. Petitioner requested a fair hearing and, after one was held, the State Commissioner of Social Services (hereinafter Commissioner) concluded that one half of the balance of the account in May 1988 was presumed available to petitioner as a resource.

Among the resources to be considered available to a person applying for medical assistance are the uncompensated value of nonexempt resources transferred prior to October 1, 1989 and within 24 months prior to the application, which are subject to the rebuttable presumption that such transfers were made for the purpose of qualifying for medical assistance (Social Services Law § 366 [5] [b]). Respondents conceded that when petitioner deposited the proceeds from the sale of her home in the joint bank account, she was presumed to have conferred upon her daughter a gift of a one-half interest in the deposited funds (see, Matter of Bobeck v Curtin, 143 AD2d

90, 92; *see also,* Banking Law § 675). Respondents also concede that because the deposit occurred in April 1988, more than 24 months prior to petitioner's application, the gift of a one-half interest in the deposited funds to petitioner's daughter cannot be considered an available resource to petitioner.

The Commissioner concluded that petitioner transferred to her daughter resources in the amount of one half of the $68,117.52 that was in the joint account as of May 1988. The two transfers that are the focus of petitioner's challenge in this proceeding are a transfer of $27,300, part of which occurred in June 1988 and the remainder in October 1988, to purchase a mobile home, and a second transfer of $7,611 in April and August 1988 to purchase a new car. Pursuant to Social Services Law § 366 (5) (b) (2), the presumption that a transfer was made for the purposes of qualifying for assistance can be rebutted by "evidence to establish that the transfer was exclusively for some other purpose".

Petitioner's daughter testified that petitioner lived alone in her own home from 1968 until 1983, when she moved in with her daughter and son-in-law. They lived together as a family unit for five years in a two-story apartment which had the bedrooms and only bathroom on the second floor. Petitioner paid one half of the rent and had her own medical insurance coverage. By 1988 it had become difficult for petitioner to go up and down stairs, and it was also inconvenient for petitioner's son-in-law, who was disabled. The family decided in 1988 to seek a more convenient housing arrangement and, therefore, petitioner's daughter used funds from the joint account to purchase a one-story mobile home which was large enough to accommodate all three family members comfortably. Petitioner's daughter testified that she used funds from the account to purchase a new car in 1989 to replace the family's six-year-old car, which had 50,000 miles on it, with a new and more reliable one.

The Commissioner's determination that petitioner had not overcome the presumption that the transfers were made to qualify for assistance is based upon three factors: title to both the mobile home and the new car was in the daughter's name; petitioner's substantial contributions to the household expenses on a monthly basis; and petitioner's poor medical condition at the time of the transfer. The evidence in the record establishes that petitioner made no monthly contributions to household expenses other than the payment of one half of the rent during the period that the family lived in the apartment. There is no evidence that petitioner made monthly contribu-

tions to the household expenses after the family moved into the mobile home. It is our view that petitioner's payment of one half of the monthly rent for the apartment has no bearing on the question of whether the transfers of funds to purchase a mobile home as the family's new residence and a new car for the family's benefit were made exclusively for a purpose other than to qualify for medical assistance.

The Commissioner's finding that petitioner was in poor health when the funds were transferred out of the account to purchase the mobile home in 1988 has no evidentiary support in the record. The Commissioner's determination refers to an August 1990 letter from petitioner's physician to petitioner's daughter which noted that the first signs of a change in mental status suggestive of early senile dementia or Alzheimer's disease go back to December 1987. The physician noted that on April 27, 1988 petitioner's chart states "patient is an unreliable historian". Absent from the Commissioner's determination is any reference to the closing remarks of the physician, which state: "At that time [April 1988] the patient did require ongoing medical and support care but that was able to be accomplished through office visits and through your care at home. At that point there was no reason to admit her to a nursing home."

In the absence of any evidence in the record that when the transfers for the purchase of the mobile home were made in 1988 petitioner's condition was such that her institutionalization in the near future was likely, there is no rational basis for concluding that the statutory presumption regarding uncompensated transfers of nonexempt resources was not rebutted by evidence that the mobile home was purchased to provide a better and more convenient living arrangement for petitioner, her daughter and her son-in-law, who had been living together as a family unit for a substantial period of time and expected to continue doing so.

We reach a contrary result concerning the transfer of funds for the purchase of the car in 1989. In contrast to the mobile home, there is no evidence that the new car was necessary because the old car was not adequate to meet petitioner's needs. Nor was there any evidence that the old car had proven unreliable. Also, petitioner's daughter testified that by the spring of 1989 petitioner's condition had deteriorated and her physician began to express concern that she might require nursing home care. In these circumstances, we cannot say that it was irrational for the Commissioner to conclude that

the statutory presumption had not been rebutted as to the transfer related to the purchase of the car.

In conclusion, the determination should be modified by annulling so much thereof as concluded that the presumption of Social Services Law § 366 (5) (b) (1) had not been overcome as to the transfer of funds used to purchase the mobile home, and the matter must be remitted to respondents for a redetermination of petitioner's eligibility. We reject petitioner's contention that as the prevailing party she is entitled to counsel fees under 42 USC §§ 1983 and 1988 (see, Matter of Shields v Blum, 80 AD2d 668, appeal dismissed 53 NY2d 937).

Weiss, P. J. and Mahoney, J., concur.

Levine, J. (concurring in part and dissenting in part). In our view, the determination of the State Commissioner of Social Services (hereinafter Commissioner) should be confirmed in its entirety. With regard to the June 1988 and October 1988 transfers of funds for the purchase of the mobile home, the majority concludes that there is insufficient evidence in the record to support the Commissioner's determination that petitioner failed to rebut the statutory presumption that the transfers were made for the purpose of qualifying for medical assistance. We disagree.

The burden of rebutting the presumption that a transfer was made for the purpose of qualifying for medical assistance is on the applicant and is satisfied only with "evidence * * * establish[ing] that the transfer was *exclusively* for some other purpose" (Social Services Law § 366 [5] [b] [2] [emphasis supplied]; *see, Matter of Cullen v New York State Dept. of Social Servs.,* 155 AD2d 857; *Matter of Lipkin v New York State Dept. of Social Servs.,* 146 AD2d 964). Here, the relevant hearing evidence was that petitioner's own physician described her as "slightly demented and confused" as of December 1987 and noted that the change in petitioner's mental status was "suggestive of early senile dementia or Alzheimer's disease". In late April 1988, it was the opinion of petitioner's physician that, although there was no reason to admit her to a nursing home, she was an "unreliable historian" and required "ongoing medical and support care" which, at the time, was being accomplished at home. In May 1988 petitioner's daughter obtained a power of attorney, supporting an inference that petitioner, then 86 years old, was having difficulty handling her own financial affairs. Shortly thereafter in June 1988, the daughter made the first of two transfers of substantial funds from the joint account to pay for the mobile home,

title to which was not taken in petitioner's name. Petitioner's daughter testified that she was unaware of petitioner's deteriorating medical condition until February 1989 and that she had no reason to suspect at the time of the transfers that petitioner would require nursing home care. She also testified that the mobile home was purchased in order to provide more comfortable and convenient housing for herself, her husband and petitioner, but was unable to explain why the mobile home was placed in her name.

From the foregoing, the Commissioner could readily find that the statutory presumption was not overcome by credible evidence *(see, Matter of Cullen v New York State Dept. of Social Servs., supra, at 858; Matter of Lipkin v New York State Dept. of Social Servs., supra)*. Unlike the majority, we cannot conclude that there is no evidentiary support in the record for the Commissioner's finding that petitioner was in poor health at the time of the subject 1988 transfers of funds. Clearly, that finding involved the resolution of issues of credibility and the drawing of inferences, both of which are exclusively functions of the Commissioner *(see, State Div. of Human Rights v Wagner, 39 NY2d 865, 866; Matter of Cullen v New York State Dept. of Social Servs., supra, at 857)*. Thus, the Commissioner was entitled to disregard the self-serving testimony of petitioner's daughter, who undeniably benefited from the mobile home purchase *(see, Matter of Lipkin v New York State Dept. of Social Servs., supra, at 965)*. Considered together with the total inability of petitioner's daughter to suggest an alternative purpose for not placing the mobile home at least partially in petitioner's name, we find no basis to disturb the determination that petitioner failed to establish that the transfers of funds for the mobile home purchase were exclusively for some purpose other than qualifying for medical assistance.

Mercure, J., concurs. Adjudged that the determination is modified, without costs, by annulling so much thereof as determined that the presumption of Social Services Law § 366 (5) (b) (2) had not been rebutted as to the June 1988 and October 1988 transfers of funds used to purchase a mobile home; matter remitted to respondents for further proceedings not inconsistent with this court's decision; and, as so modified, confirmed.