2000 UT 14

Michael L. ADKINS and Roberta B. Adkins, Plaintiffs, Appellants, and Cross–Appellees,

v.

UNCLE BART'S, INC. dba Uncle Bart's Club, and Charley's Club, Inc. dba Charley's Club, Defendants, Appellees, and Cross–Appellants,

and

Club Management, Inc., James D. Mickelson, Douglas J. Mickelson, Jeannie B. Mickelson, Marlene M. Mickelson, Judy Duke, and Tracy Duke, Defendants and Appellees.

No. 970261.

Supreme Court of Utah.

Jan. 18, 2000.

Rehearing Denied May 31, 2000.

Edward M. Garrett, James D. Garrett, Salt Lake City, for Adkins.

Donald J. Purser, Darci Dow, Salt Lake City, for Uncle Bart's, Inc.

Mark L. Anderson, Salt Lake City, for Charley's Club, Inc., Mickelsons, and Dukes.

Stuart W. Hinckley, David W. Scofield, Salt Lake City, for amicus curiae Utah Licensed Beverage Association and Utah Hospitality Association.

HOWE, Chief Justice:

## INTRODUCTION

¶1 Plaintiffs Michael L. Adkins and Roberta A. Adkins appeal from a judgment entered by the trial court after the court reduced the amount of damages awarded them by a jury in accordance with the Utah Dramshop Act, Utah Code Ann. § 32A–14–101 (1994). Defendants Uncle Bart's, Inc., d/b/a Uncle Bart's Club, and Charley's Club, Inc., cross-appeal contending that plaintiffs have no cause of action against them under the Dramshop Act.

## BACKGROUND

¶2 On March 1, 1994, seventeen-year-old Sean Adkins was one of seven teenage boys riding in a seven-passenger station wagon being driven by Scott Buchanan. The boys, all students at Highland High School in Salt Lake City, were traveling to Bountiful, Utah, to watch their school basketball team play in a tournament. They left Highland High School at approximately 6:45 p.m. and headed west on Interstate 80 through South Salt Lake City. As they approached the junction of Interstate 80 with northbound Interstate 15, one of the tires on the vehicle went flat. Buchanan drove to the northbound Interstate 15 "collector" route and parked the vehicle on the road's margin/emergency lane.

¶3 After the vehicle stopped, several of the boys stayed in the car to keep the brake lights on, but others, including Sean, gathered behind the disabled vehicle. Near this same time, a vehicle driven by defendant Paul Bredehoft entered the collector route and traveled north on the road's margin/emergency lane at an estimated speed of 60 to 65 miles per hour. Bredehoft did not reduce his speed and collided with the disabled Buchanan vehicle. Immediately prior to the impact, three of the boys who had

been standing behind the Buchanan vehicle leaped over the side guardrail to safety. However, Sean, who had been standing closer to the lane of travel than the others, was struck by the Bredehoft vehicle and killed.

¶4 Bredehoft was arrested at the scene. Toxicology reports showed that at the time of the accident his blood alcohol percentage was .27 percent, more than three times the legal limit for operating a motor vehicle. *See* Utah Code Ann. § 41–6–44(1)(a)(i) (1994).[1] Facts gathered following the accident established that in the two-and-one-half-hour period prior to colliding with the Buchanan vehicle, Bredehoft had consumed approximately 18 to 24 ounces of alcohol while patronizing Uncle Bart's Club, Charley's Club, and Ann Sistties's The Clubhouse,[2] three private drinking establishments.

¶5 Under a theory of wrongful death, the plaintiffs, Sean's parents, brought this action against Uncle Bart's Club and Charley's Club (together the "dramshop defendants"), Ann Sisttie (dba the Clubhouse), Club Management, Inc.,[3] and Paul Bredehoft. The plaintiffs contended that the dramshop defendants, Ann Sisttie, and Club Management were vicariously responsible for their son's death because they provided Bredehoft with alcohol after he was legally inebriated. The plaintiffs also named James D. Mickelson, Douglas J. Mickelson, Jeannie B. Mickelson, Marlene M. Mickelson, Judy Duke, and Tracy Duke (collectively, the "dramshop owners") as defendants. The complaint alleged that the dramshop owners were personally liable for selling liquor to Bredehoft and as the alter egos of the dramshop corporations.

¶6 During pretrial proceedings, the dramshop defendants, Ann Sisttie, Club Management, and the dramshop owners moved for summary judgment on several grounds. The dramshop owners and Club Management contended that under Utah law they were

---

1. This section states that "[a] person may not operate or be in actual control of a vehicle within this state if the person has a blood or breath alcohol concentration of .08 grams or greater as shown by a chemical test given within two hours after the alleged operation or physical control."

2. Ann Sisttie is an individual doing business as The Clubhouse. On the night of the accident,

Bredehoft consumed half a beer at The Clubhouse.

3. Club Management is a corporation created by the dramshop owners to serve as the management entity of Uncle Bart's Club and Charley's Club.

not personally liable for the acts of the dramshops that were Utah corporations. The dramshop defendants asked the court to rule that the Dramshop Act provided plaintiffs their exclusive remedy against them, that under the Dramshop Act punitive damages could not be awarded, and that any damages awarded plaintiffs could not exceed the $100,000 cap set forth in the Dramshop Act. The trial court granted the motions of the dramshop owners and Club Management and dismissed the plaintiffs' complaints against them. The trial court then ruled that the Dramshop Act provided plaintiffs' exclusive remedy against the dramshop defendants and Ann Sisttie, and it dismissed plaintiffs' claim under the Utah Liquor Control Act and their claim of common law negligence. The court also ruled that punitive damages were not prohibited by the Dramshop Act but reserved its ruling on capping damages.

¶ 7 Thereafter, a jury trial was held with Bredehoft, Uncle Bart's Club, Charley's Club, and Ann Sisttie as defendants. The jury returned a verdict against Bredehoft, Uncle Bart's Club, and Charley's Club, but found no cause of action existed against Ann Sisttie. The jury awarded damages in favor of plaintiffs and against Bredehoft and the dramshop defendants in the amounts of $7,725.73 for special damages and $1,000,000 for general damages. The jury also returned a separate verdict awarding the plaintiffs punitive damages in the amount of $500,000 against Bredehoft, $250,000 against Uncle Bart's Club, and $100,000 against Charley's Club.

¶ 8 Following the verdict, the trial court ruled that the Dramshop Act's damage cap was constitutional and required a reduction of damages against the dramshop defendants. The court relied on that portion of the Act that reads: "The total amount of damages that may be awarded to any person pursuant to a cause of action under this chapter that arises after July 1, 1985, is limited to $100,000 and the aggregate amount which may be awarded to all persons injured as a result of one occurrence is limit-

ed to $300,000." Utah Code Ann. § 32A–14–101(5) (1994).[4]

¶ 9 In an attempt to follow the Dramshop Act's limitation on damages, the trial court reduced the jury award and entered a judgment of $200,000 each against Uncle Bart's Club and Charley's Club—or a judgment in favor of each plaintiff in the amount of $100,000 against each dramshop defendant for special and compensatory damages. The court then ruled that an award of punitive damages would not be subject to the Dramshop Act's limitation on damages and awarded the plaintiffs $250,000 in punitive damages against Uncle Bart's Club and $100,000 in punitive damages against Uncle Charley's Club. Finally, the court entered judgment against Bredehoft in the amount of $1,507,725.73, representing the full jury award of $7,725.73 in special damages, $500,000 in punitive damages, and $1,000,000 in general damages.

¶ 10 Plaintiffs appeal contending that the trial court erred by (1) ruling that the Dramshop Act provided the exclusive remedy for their son's death, (2) dismissing their claim brought under the Liquor Control Act, (3) dismissing their claim alleging common law negligence, and (4) reducing the jury's award of damages. The dramshop defendants cross-appeal contending the plaintiffs do not have a cause of action against them under the Dramshop Act and that the court erred by not dismissing plaintiffs' complaint against them. Bredehoft does not appeal.

## STANDARD OF REVIEW

■ ¶ 11 When reviewing statutory interpretation, we review for correctness and give no deference to the conclusions of the trial court. *See Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 519 (Utah 1997).

## ANALYSIS

### I. DRAMSHOP ACT AS EXCLUSIVE REMEDY

■ ¶ 12 The plaintiffs contend that the trial court erred when it dismissed their

---

4. The damage limitation has since been amended to read: "The total amount of damages that may be awarded to any person pursuant to a cause of action under this chapter that arises after January 1, 1998, is limited to $500,000, and the aggregate amount which may be awarded to all persons injured as a result of one occurrence is limited to $1,000,000." Utah Code Ann. § 32A–14–101(6) (1998).

claim alleging common law negligence and their claim brought under the Liquor Control Act, and by ruling that the Dramshop Act provided their exclusive remedy against the dramshop defendants. To determine whether the trial court erred, we first analyze whether the plaintiffs had a cause of action for negligence against the dramshop defendants at common law. We will then determine whether they have a cause of action under the Liquor Control Act. If they could have recovered against the dramshop defendants under either or both of these theories prior to the enactment of the Dramshop Act in 1981, we must then determine whether the trial court properly ruled that the Act preempted those causes of action and now serves as the plaintiffs' exclusive remedy.

¶ 13 At common law, third parties did not generally have a cause of action against dramshops that provided alcohol to another who became intoxicated and caused personal injury. *See* 45 Am.Jur.2d *Intoxicating Liquors* § 502 (1999); *see also* Annotation, *Right of Action at Common Law for Damage Sustained by Plaintiff in Consequence of Sale or Gift of Intoxicating Liquor or Habit-forming Drugs to Another,* 97 A.L.R.3d 528 (1980). The legal theory behind the general rule is that when a third party is injured by an inebriated individual, it is the drinking of the alcohol, not the furnishing of it, which proximately causes the injury. *See Yost v. State,* 640 P.2d 1044, 1046 n.2 (Utah 1981).

¶ 14 A few courts have held that the selling of liquor to a visibly intoxicated person may be found by a jury to constitute a foreseeable unreasonable risk of harm to others through action of the intoxicated person and that such negligence cannot be held as a matter of law not to be a proximate cause of resulting injuries. *See, e.g., Rappaport v. Nichols,* 31 N.J. 188, 204, 156 A.2d 1, 9 (1959); *Campbell v. Carpenter,* 279 Or. 237, 566 P.2d 893 (1977).

¶ 15 Prior to the enactment of the Dramshop Act, Utah did not recognize a third-party cause of action against dramshops. However, in *Rees v. Albertson's, Inc.,* 587 P.2d 130, 133 (Utah 1978), and again in *Yost,* 640 P.2d at 1046, this court held that the negligence of a vendor in selling alcohol to an underage drinker in violation of a statute might be considered in a suit in apportioning negligence among several defendants, but neither case established a common law cause of action in favor of third persons against commercial vendors of alcohol where there was no statutory violation.

¶ 16 In 1981, the Dramshop Act was enacted and created a statutory cause of action, which did not exist at common law, against dramshops. Our legislature, like those of other states, passed dramshop legislation to abrogate the common law rule precluding the liability of a party who sells or otherwise provides alcohol to a person who is intoxicated and injures another. Dramshop acts are enacted to fill the void that existed at common law by imposing a form of strict liability on specific individuals who illegally provide alcohol to certain classes of consumers. *See Millross v. Plum Hollow Golf Club,* 429 Mich. 178, 413 N.W.2d 17 (1987). "[T]he legislature intended the Dramshop Act to be a complete and self-contained solution to a social problem not adequately addressed at common law." *Browder v. International Fidelity Ins. Co.,* 413 Mich. 603, 321 N.W.2d 668, 675 (1982). We have held that the legislative purpose of the Act "was to compensate innocent third parties by making dramshop owners strictly liable without regard to the finding of fault, wrongful intent, or negligent conduct on their part." *Reeves v. Gentile,* 813 P.2d 111, 116 (Utah 1991).

¶ 17 The plaintiffs point to "intent language" placed in the House and Senate journals by the legislature when the Dramshop Act was amended in 1997 to impose liability on dramshops for the death of a third person:

> The express inclusion of wrongful death to Section 31A–14–101 does not create a new right but merely clarifies that a person has the right to recover both special and general damages for wrongful death under the Dramshop Act.
>
> The bill does not modify any common law right that exists for injuries or wrongful death resulting from giving, selling, or otherwise providing alcoholic beverages.

Senate Journal, 1997 Sess., at 255, 293; House Journal, 1997 Sess., at 539.

¶ 18 The plaintiffs argue that this "intent language" was a recognition by the legislature that a common law right existed against dramshops for wrongful death of third persons. We disagree. The legislature was simply stating that the Act was in addition to any common law right that might exist, but it did not state that a common law right existed. The language is clear and does not aid the plaintiffs. We therefore conclude that because a third-party cause of action against dramshops did not exist in this state at common law, the plaintiffs' common law negligence claim against the dramshop defendants was properly dismissed by the trial court.

¶ 19 We next consider whether the trial court erred by dismissing plaintiffs' claim under Utah Code Ann. § 32A–5–107(24)(h) of the Liquor Control Act. Section 32A–5–107 is entitled "operational restrictions" and provides, in part:

(h) An officer, director, managing agent, employee, and any other person employed by or acting for or in behalf of any licensee, may not sell, deliver, or furnish, or cause or permit to be sold, delivered, or furnished any liquor to any:

(i) minor;

(ii) person actually, apparently, or obviously drunk;

(iii) known habitual drunkard; or

(iv) known interdicted person.

*Id.* The plaintiffs complain that the dramshop defendants violated this section when they sold alcohol to Bredehoft, a known habitual drunkard who was actually, apparently, or obviously drunk. They further contend that the violation served as prima facie evidence of negligence, and thus stated a cause of action against the dramshop defendants.

¶ 20 We disagree. The plaintiffs correctly quote *Ryan v. Gold Cross Services, Inc.*, 903 P.2d 423, 426 (Utah 1995), which states, "It is a general rule of Utah law that violation of a safety standard set by statute or ordinance constitutes prima facie evidence of negligence." We agree with this statement of the law. However, we have established that there is no common law basis to support a third-party negligence claim against dramshops. Moreover, *Ryan* ad-

dressed a safety statute whereas section 32A–5–107 governs private club liquor licenses and sets forth the requirements and duties of obtaining and maintaining such licenses in Utah.

¶ 21 The section prescribes its own penalties for individuals or establishments that violate its provisions:

Each corporation or association granted a private club liquor license and its employees, officers, managing agent, and members shall comply with the following conditions and requirements. Failure to comply, may result in a suspension or revocation of the license or other disciplinary action taken against individual employees or management personnel.

§ 32A–5–107. Decisions regarding suspensions, revocations, and other disciplinary actions are left to the state liquor control commission. *See Pride Club v. Miller*, 572 P.2d 385, 387 (Utah 1977). There is nothing in the section that creates a third-party civil cause of action against establishments that violate the liquor licensing prohibitions.

¶ 22 We conclude that the trial court did not err in dismissing the plaintiffs' claim brought under section 32A–5–107 of the Liquor Control Act. Plaintiffs' remedy, if any, must be found in the Dramshop Act.

## II. CAUSES OF ACTION UNDER THE DRAMSHOP ACT

¶ 23 On cross-appeal, the dramshop defendants contend that the trial court erred when it refused to dismiss the plaintiffs' case by ruling that they have a cause of action under the Dramshop Act.

¶ 24 To determine whether the plaintiffs have a cause of action, we examine the provisions of the Act. The Act, at the time of this tragic accident, provided that dramshops that serve alcohol in violation of the Act were liable for "injuries in person, property, or means of support to any third person, or to the spouse, child, or parent of that third person." This language is unambiguous; therefore, "we do not look beyond the language's plain meaning to divine legislative

intent." *Horton v. Royal Order of the Sun*, 821 P.2d 1167, 1168 (Utah 1991). Accordingly, third persons—or the spouse, parent, or child thereof—have a cause of action for "injuries in person, property, or means of support" where they were injured by a person who was served alcohol by a dramshop in violation of the Act.

### A. Injuries in Person

■ ¶ 25 The dramshop defendants do not dispute that the plaintiffs have suffered mental anguish and grief over their son's death but contend that mental anguish and grief do not amount to "injuries in person." The dramshop defendants construe "injuries in person" to mean "physical bodily injuries." We agree with this interpretation.

¶ 26 The mental and emotional anguish that the plaintiffs have suffered does not constitute "bodily injuries" within the meaning of those words as used in the Act. The rule that "injuries in person" means "physical bodily injuries" and not mental or emotional injuries is widely recognized. *See Knierim v. Izzo*, 22 Ill.2d 73, 174 N.E.2d 157, 161 (1961) (holding that mental suffering resulting in no physical injury is not an injury in person and therefore not recoverable under Dramshop Act in action brought by wife following death of husband); *Robertson v. White*, 11 Ill.App.2d 177, 136 N.E.2d 550, 554 (1956) (holding that emotional pain and suffering are not compensable injuries under Dramshop Act); *State Farm Mut. Auto. Ins. Co. v. Isle*, 265 Minn. 360, 122 N.W.2d 36, 41 (1963) (stating wife not entitled to damages for injury to person under Dramshop Act based on her mental suffering where she did not sustain accompanying physical injury); *Lyons v. Tiedemann*, 135 A.D.2d 509, 522 N.Y.S.2d 159, 160–61 (1987) (stating plaintiffs could not recover for conscious pain and suffering and wrongful death under Dramshop Act). *See generally* George A. Locke, Annotation, *Recovery Under Civil Damage (Dram–Shop) Act for Intangibles such as Mental Anguish, Embarrassment, Loss of Affection or Companionship, or the Like*, 78 A.L.R.3d 1199 (1977); Annotation, *What Constitutes "Injury in Person or Property"*

*Within Civil Damage or Dramshop Act*, 6 A.L.R.2d 798 (1949).

### B. Injuries in Property

■ ¶ 27 The dramshop defendants next contend that the plaintiffs have not suffered injuries in property as a result of their son's death. The defendants specifically argue that loss of "support, comfort, society, counsel and services" does not constitute an injury in property.

¶ 28 Although there are no Utah cases that analyze or define "injuries in property" in the Act's context, cases from other jurisdictions have addressed the issue. The Illinois Supreme Court has held that under their Dramshop Act injuries in property include only injuries to real or personal property—not damages for loss of comfort, support, or society of a loved one for which monetary damages might be recoverable under a wrongful death act. *See Howlett v. Doglio*, 402 Ill. 311, 83 N.E.2d 708, 713–14 (1949) (holding that mother could not recover under Dramshop Act because her daughter's death did not constitute an injury in property to the mother). However, at least two courts have held that the payment of funeral expenses of a minor child by parents is an "injury to property" within the meaning of a Dramshop Act. *See Glaesemann v. New Brighton*, 268 Minn. 432, 130 N.W.2d 43 (1964); *Iszler v. Jorda*, 80 N.W.2d 665 (N.D. 1957). Parents are legally obligated to pay funeral expenses of their minor children, which results in a diminution of assets of the parents. We agree that funeral costs and attendant expenses to the burial are "injuries to property" of the parents.

### C. Injuries in Means of Support

■ ¶ 29 The dramshop defendants next contend that the plaintiffs have not suffered injuries in means of support. We agree that "means of support" includes lost wages and the inability to continue to earn a living, not emotional support, comfort, society, etc. *See Stevens v. Lou's Lemon Tree, Ltd.*, 187 Ill. App.3d 458, 135 Ill.Dec. 58, 543 N.E.2d 293, 297–98 (1989); *Farmers State Bank & Trust Co. v. Lahey's Lounge, Inc.*, 165 Ill.App.3d

473, 116 Ill.Dec. 531, 519 N.E.2d 121, 123–25 (1988).

¶ 30 Here, the plaintiffs have not suffered injuries in means of support because they were not financially supported by their seventeen–year–old son. *See Jones v. Fisher*, 309 N.W.2d 726, 730 (Minn.1981) (stating that money damages for injuries in means of support do not include loss of emotional support but are limited to means of support to dependents); *Robertson*, 136 N.E.2d at 555 (affirming lower court's dismissal of parents' dramshop suit where deceased child was not financially supporting parent ´at time of child's death); *see also Angeloff v. Raymond*, 70 Ill.App.3d 594, 27 Ill.Dec. 165, 388 N.E.2d 1128 (1979) (holding children of father who was shot and killed by intoxicated defendant did not suffer injuries in means of support where father did not provide financial support prior to his death).

#### D. Death is Not an Injury in Person, Property, or Means of Support under the 1994 Dramshop Act

¶ 31 The Act is a legislative enactment that creates a statutory cause of action for specific injuries resulting from its violation. "Application of basic principles of statutory construction forbids an enlargement of the classification of actionable injuries under the Dramshop Act." *Rogers v. Dwight*, 145 F.Supp. 537, 540 (E.D.Wis.1956) (citations omitted); *see also Richardson v. Matador Steak House, Inc.*, 948 P.2d 347, 349–50 (Utah 1997) (refusing to enlarge the classification of persons who could recover under Act beyond its clear language). The Act plainly states that to bring an action, a person must have suffered injuries in "person, property, or means of support." § 32A–14–101 (1994).

¶ 32 The Act does not provide for recovery for death,[5] and because the rights conferred by the Act may not be enlarged, there can be no recovery for death unless the Act expressly states such a right. *See* 45 Am.Jur.2d, *Intoxicating Liquors* § 564

(1969); *see also Messenger v. Vogler*, 195 Ill.App.3d 866, 142 Ill.Dec. 711, 553 N.E.2d 61, 63 (1990) (holding that decedents' pain and suffering prior to death may have been compensable under Dramshop Act, but not instantaneous death).

¶ 33 We therefore conclude that the plaintiffs have not suffered injuries in person, property—except for funeral and burial expenses—or means of support, and because there was no provision allowing recovery for death under the Dramshop Act when the plaintiffs' son was killed, they have no cause of action to sue the dramshop defendants for their son's death.

### III. THE ACT AND THE WRONGFUL DEATH STATUTE

¶ 34 Prior to trial, the plaintiffs and the dramshop defendants stipulated that "the elements of damage for a cause of action for the wrongful death of a child as established by the wrongful death statute [section 78–11–6] and the interpreted case law of the appellate courts of the State of Utah apply without exception to this cause of action claiming a violation of the Dramshop Liability Act § 32A–14–101, UCA (1953)."

¶ 35 Based on that stipulation, the trial court entered the following order:

That the stipulation of defendants as set forth above is the "law of the case" in this action and that the elements of a cause of action for the death of a child as set forth in title 78–11–6 UCA 1953 and the interpretive decisions of the appellate courts of this state apply without exception to the cause of action pending in this court based upon title 32A–14–101 UCA 1953 (Dramshop Liability Act).

The dramshop defendants now contend that despite their stipulation, the trial court erred when it entered the order engrafting the stipulation as the "law of the case."

¶ 36 Our wrongful death statute is fault-based and provides parents of a de-

---

5. In 1997 the legislature amended the Act, and effective January 1, 1998, dramshops that violate the Act can be held liable for "an injury in person, property, or means of support to any third person" and for *"the death of a third person."* § 32A–14–101(1) (emphasis added). That amendment has no force or effect in this case where the plaintiffs' son was killed in 1994.

ceased minor child with a cause of action if the death was "caused by the wrongful act or neglect of another." § 78–11–6. It must be shown that a defendant negligently breached some duty owed to the child and that the breach proximately caused the death. If those elements can be proven, a parent's recoverable damages may include intangibles such as loss of the child's society, companionship, protection, and affection. *See Jones v. Carvell,* 641 P.2d 105 (Utah 1982).

¶ 37 The Act, on the other hand, is not fault-based, but rather a strict liability statute. Thus, because the Act imposes strict liability on defendants, while the wrongful death statute requires proof of negligence and proximate cause, the two statutes are incompatible and cannot be merged into one cause of action. *See Knierim,* 174 N.E.2d at 160–61 (holding that action against tavern could not be properly maintained under wrongful death statute; damages under Dramshop Act cannot be limited or expanded by wrongful death act); *see also Lein v. Pietruszewski,* 61 Ill.2d 350, 335 N.E.2d 772, 773 (1975) (holding that wrongful death act and Dramshop Act are separate and distinct); *Jones v. Fisher,* 309 N.W.2d 726, 730–31 (Minn.1981) (stating recoverable damages under Dramshop Act are limited to loss of means of support to decedent's dependants; recoverable damages under wrongful death act may include loss of companionship, advice, or counsel); *Bongiorno v. D.I.G.I., Inc.,* 135 Misc.2d 516, 515 N.Y.S.2d 969, 971 (1987), *aff'd,* 138 A.D.2d 120, 529 N.Y.S.2d 804 (1988) (noting that wrongful death and dramshop actions are "wholly unrelated both as to scope and purpose").

¶ 38 The plaintiffs rely on *Beaupre v. Boulevard Billiard Club,* 510 A.2d 415 (R.I.1986), where the court held that recovery for wrongful death could be had under that state's Dramshop Act. However, that Dramshop Act provided for recovery for "any injury." As we have earlier pointed out, our Dramshop Act is drawn narrowly and does not allow recovery for "any injury."

¶ 39 The plaintiffs contend, however, that when the trial court entered an order accept-ing the parties' stipulation—that the elements of a wrongful death action applied to their dramshop action—the stipulation became the controlling law in the case. They also point out the general rule that issues not raised in the trial court cannot be raised for the first time on appeal.

¶ 40 The plaintiffs correctly state the rule that "[o]rdinarily, courts are bound by stipulations between parties." *First of Denver Mortgage Investors v. C.N. Zundel & Assocs.,* 600 P.2d 521, 527 (Utah 1979). However, "such is not the case ... when points of law requiring judicial determination are involved." *Id.* As we have earlier pointed out in this opinion, the cause of action provided by the Act is purely statutory and narrowly confines the damages recoverable. The Act specifies "injuries to person, property, or means of support." Any expansion of the damages that may be recovered must be undertaken by the legislature, not the courts. Furthermore, as we noted in *Kaiserman Associates, Inc. v. Francis Town,* 977 P.2d 462, 464 (Utah 1998), "an overlooked or an abandoned argument should not compel an erroneous result. We should not be forced to ignore the law just because the parties have not raised or pursued obvious arguments." In this case, we are construing a legislative act that will be controlling not only in this case but in future cases. We cannot alter a correct construction simply because both parties misconstrued the Act in the trial court.

## IV. PUNITIVE DAMAGES

¶ 41 The dramshop defendants next contend that punitive damages are not recoverable under the Act and that the trial court erred by allowing them. The Act does not expressly allow for punitive damages and specifically enumerates the damages that may be awarded:

(5) The *total amount* of damages that may be awarded to any person *pursuant to a cause of action* under this chapter that arises after July 1, 1985, is limited to $100,000 and the aggregate amount which may be awarded to all persons injured as a

result of one occurrence is limited to $300,-000.

§ 32A–14–101 (1994) (emphasis added). The legislature's stated purpose in enacting the Dramshop Act "was to compensate innocent third parties by making dramshop owners strictly liable without regard to the finding of fault, wrongful intent, or negligent conduct on their part." *Reeves*, 813 P.2d at 116. The Act created a cause of action for innocent third parties, and "intended to place the economic consequences of intoxicated behavior primarily on the businesses that profited from the liquor trade." *Walter v. Carriage House Hotels, Ltd.*, 164 Ill.2d 80, 207 Ill.Dec. 33, 646 N.E.2d 599, 603 (1995). The Act is not intended to punish dramshop owners and their employees, and because it does not expressly permit punitive damages, we will not expand the Act to permit their award. In this conclusion, we are in accord with courts of many other states that allow punitive damages only when expressly authorized by statute. *See Nelson v. Restaurants of Iowa, Inc.*, 338 N.W.2d 881, 885 (Iowa 1983), and cases cited therein; *Coughlin v. Radosevich*, 372 N.W.2d 817, 820–21 (Minn.Ct.App. 1985).

## V. THE CONSTITUTIONALITY OF THE DAMAGE CAP

¶ 42 The plaintiffs next contend that the trial court violated several provisions of the Utah Constitution when it capped the damages awardable to them at $400,000 as required by the Act. They assert that the capping violated constitutional provisions guaranteeing open courts and uniform operation of the law and prohibiting special legislation. Inasmuch as we have held that the plaintiffs can recover only funeral and burial expenses, which will be far less than the cap, their constitutional challenges are moot.

## VI. ADDITIONAL ARGUMENTS

¶ 43 Because the plaintiffs' exclusive remedy lies in the Act, we need not address the plaintiffs' assignment of error regarding the granting of summary judgment dismissing dramshop owners from the action. Moreover, the trial court's refusal to award interest on the amount of the jury verdict and the trial court's granting a stay of execution with a minimum bond are moot questions.

## CONCLUSION

¶ 44 We conclude that the trial court did not err in determining that the plaintiffs had no cause of action against the dramshop defendants under the Liquor Control Act or at common law based on negligence. Moreover, the plaintiffs did not have a cause of action under the Act because they did not suffer injuries in person, property except for funeral and burial expenses, or means of support. The trial court erred by accepting the parties' stipulation that a wrongful death action could be brought under the Act, and it erred by allowing an award of punitive damages.

¶ 45 We are not unmindful of the deep loss suffered by the plaintiffs in the tragic death of their son. However, judicial restraint prevents us from affording greater recovery to the plaintiffs against the dramshop defendants where the legislature did not so provide.

¶ 46 The judgment is reversed and remanded with instructions to enter a judgment in favor of the plaintiffs in the amount of the funeral costs and expenses attendant to burial, together with interest thereon.

¶ 47 Justice RUSSON concurs in Chief Justice HOWE's opinion.

¶ 48 Justice ZIMMERMAN concurs in sections II, III, IV, V, and VI of the majority opinion and in the result of section I.

DURHAM, Associate Chief Justice, dissenting:

¶ 49 The majority opinion states categorically that, "[p]rior to the enactment of the Dramshop Act, Utah did not recognize a third-party common law cause of action against dramshops. Maj. Op., ¶ 15 (referring to *Yost v. State*, 640 P.2d 1044 (Utah 1981); *Rees v. Albertson's, Inc.*, 587 P.2d 130 (Utah 1978)). I cannot draw the same inference from those cases.

¶ 50 In *Rees*, the plaintiff was a minor and an intoxicated person who had injured third

parties and who had been required to pay compensation. *See Rees,* 587 P.2d at 131. The plaintiff sued Albertson's, seeking contribution on the basis that it had illegally sold the beer that caused the intoxication. *See id.* The court's analysis turned on foreseeability, and its conclusion was straightforward:

[W]e think reasonable minds could believe that in selling beer to a minor, such as plaintiff, the defendant reasonably should have foreseen the likelihood of it being combined with an automobile and result [sic] in some occurrence such as eventuated here.

To be considered in connection with what has been said above are these principles: that the questions relating to negligence and proximate cause are generally for the fact-trier, court or jury, to determine. A party should not be deprived of the privilege of having such an adjudication of his claims unless it appears that even upon the facts claimed by him he could not establish a basis for recovery.

*Id.* at 133 (footnotes and citations omitted).

¶ 51 The plaintiff in *Rees* was not suing for his own injuries; he sought *contribution* and an allocation of liability *for injuries to third parties*. No claim for contribution could or would lie absent a duty and potential liability running from Albertson's to the third party (hence the court's care to assess the foreseeability of third-party injuries). The *Rees* court, in fact, recognized the legitimacy of a third-party claim when it permitted the plaintiff to go to trial on the contribution question.

¶ 52 Three years later, the court reaffirmed its position in *Rees.* The plaintiff in *Yost v. State,* 640 P.2d 1044 (Utah 1981), had been injured in an automobile accident allegedly caused by the defendant's illegal sale of liquor to several minors. *See id.* at 1045–46. The court declared:

Regardless of the percentage of liability attributable to [the defendant liquor seller] relative to the other defendants, he is liable for [plaintiff] Yost's total damage, reduced by: 1) the percentage of negligence attributed to Yost, and 2) the greater of

the amount of the consideration paid by [another defendant, the driver of the vehicle that crashed] for his release, or the amount, if any, by which the release provides that the total claim shall be reduced.

*Id.* at 1048 (footnotes and citations omitted).

¶ 53 In other words, the court affirmed an allocation of liability running from the provider of the liquor to a third party injured by an intoxicated minor, subject to a reduction for the plaintiff's own liability. The only theoretical basis for the ruling is a common law cause of action by an injured third party against one who illegally sells liquor.

¶ 54 It is, of course, a difficulty that neither *Rees* nor *Yost* contains an extensive analysis of the determination that a cause of action would lie, and it is legitimate to ask if the court fully recognized the extent to which it was extending existing common law principles to a type of claim without a solid history in Utah. On the other hand, the lack of scrutiny applied to the question might well reflect an underlying assumption by the court that standard principles of tort analysis (foreseeability, causation, allocation of liability) were applicable as a matter of course to this fact pattern. In any event, I do not believe it to be accurate or adequate to dismiss these holdings summarily, as does the majority opinion. They are definitively based, at the least, on an assumption that the illegal provision of alcohol could give rise to a claim of liability to third parties. I think the majority errs when it asserts that "neither case established a common law cause of action in favor of third persons against commercial vendors of alcohol where there was no statutory violation." Maj. Op., ¶ 15. Neither opinion uses language we might call "establishing," but neither ruling could stand without an assumption that such claims were legitimate. Contribution is not available from a defendant who does not have liability to the injured party in the first place, nor is allocation of liability to such a defendant possible in any other setting.

¶ 55 Because the majority's conclusions about the effect of the Dramshop Act are

predicated on its conclusion that no common law negligence existed prior to its enactment, I cannot join its reasoning. Furthermore, if in fact such a common law claim existed, it is not clear to me why its persistence would be precluded by the statutory scheme of the Dramshop Act absent an express determination by the legislature to override related common law. The Dramshop Act contains no such determination, and in fact is strangely devoid of language explaining its purpose.[6]

¶ 56 For the foregoing reasons, I dissent from the majority's holding that plaintiffs had no common law cause of action. At the very least, I think this court should have engaged in an independent analysis of whether the common law cause of action acknowledged in our old cases ought, as a matter of policy and law development, to co-exist in the era ushered in by our Dramshop Act, or be definitively abandoned after such an analysis.

¶ 57 I agree with the majority's conclusions regarding the interaction of the Dramshop Act and wrongful death claims. The harsh result in this case may in fact reflect one of the factors that ought to be considered in deciding the current vitality of, and need for, the common law cause of action as opposed to the limited remedies provided by the Dramshop Act.

¶ 58 Justice STEWART concurs in Associate Chief Justice DURHAM's dissenting opinion.

---

6. The majority cites language from *Reeves v. Gentile*, 813 P.2d 111 (Utah 1991), declaring the legislative purpose of the Dramshop Act, but unfortunately, examination of the *Reeves* opinion reveals no source for the declaration; it appears to have simply been an assumption made by the court based on its assessment of dramshop legislation in general.